## Peter L. Braun, D.D.S. v. Board of Dental Examiners

[702 A.2d 124]

No. 96-105

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed September 5, 1997

*David A. Otterman* of *Otterman and Allen, P.C.*, Barre, for Appellant.

*Wendy A. Burroughs*, Assistant Attorney General, Waterbury, for Appellee.

**Gibson, J.** Peter Braun, a licensed dentist, appeals the Washington Superior Court's order affirming disciplinary action imposed by the Vermont Board of Dental Examiners. On appeal, Dr. Braun contends (1) that the evidence before the Board was insufficient to support its finding that his actions constituted a gross failure to uphold the standard of care, (2) that the actions for which he was disciplined were authorized by statute and regulation, (3) that he was given inadequate notice of the violations for which he was disciplined, and (4) that the statute is unconstitutionally vague. We affirm.

The basic facts are not in dispute. Dr. Braun has a dental practice where he provides general dental care and runs a lab in which dentures are manufactured. In July 1992, patient H.D. met with Dr. Braun to talk about having her remaining twenty-three teeth removed and replaced with dentures. After examining the patient, Dr. Braun directed his dental assistant (a person authorized by statute to assist a licensed dentist) to take impressions of the patient's teeth to make temporary, or "immediate," dentures. Approximately one month later, all of H.D.'s teeth were removed by an oral and maxillofacial surgeon. The surgeon inserted the immediate dentures from Dr. Braun on the day H.D.'s teeth were removed.

On August 14, three days after the extraction of her teeth, H.D. returned to Dr. Braun's office, complaining of sore spots. She was seen by the dental assistant, who removed her dentures and observed that her stitches had not yet been removed. The assistant then discussed the situation with Dr. Braun separately, who examined the dentures and directed his assistant to make an alteration. The assistant did so and returned the dentures to H.D. H.D. left the office

without being examined by Dr. Braun. On August 26, one week after the oral surgeon removed her stitches, H.D. returned to Dr. Braun for another appointment. Again the patient was seen only by the dental assistant. The assistant conferred with Dr. Braun, who directed him to perform a soft-tissue relining.

On September 15, more than one month after H.D.'s teeth were removed, she returned for another appointment, complaining of discomfort. She was seen by Dr. Braun on this visit, who examined her and scheduled an additional relining. H.D. returned on October 29, still complaining of discomfort. She was seen by the dental assistant, and her dentures were again altered after the assistant consulted with Dr. Braun. H.D. left without being examined by Dr. Braun.

H.D. subsequently filed a complaint. The State brought charges of unprofessional conduct, and following a hearing, the Board of Dental Examiners found that Dr. Braun had violated the statutory standard of care and ordered him to enroll in a continuing-education program. See 26 V.S.A. §§ 767, 809(a) (authorizing Board to investigate complaints and discipline licensees). Pursuant to 3 V.S.A. § 130a(a), (b), Dr. Braun appealed the Board's decision to the Director of the Office of Professional Regulation, which affirmed the order. Dr. Braun then appealed to the Washington Superior Court, see 3 V.S.A. § 130a(c), which reviewed the case on the basis of the record created by the Board and affirmed the decision. This appeal followed.

## I.

Dr. Braun first argues that the evidence before the Board was insufficient to support its finding and conclusion that his treatment of H.D. constituted a gross failure to uphold the statutory standard of care. That standard allows the Board to discipline a dentist for the:

> gross failure to use and exercise on a particular occasion or the failure to use and exercise on repeated occasions, that degree of care, skill and proficiency which is commonly exercised by the ordinary skillful, careful and prudent dentist . . . engaged in similar practice under the same or similar conditions, whether or not actual injury to a patient has occurred.

26 V.S.A. § 809(a)(21). We have stressed that grossly negligent conduct is more than a mere error of judgment, momentary inattention, or loss of presence of mind. *Hardingham v. United Counseling*

*Serv. of Bennington County, Inc.*, 164 Vt. 478, 481, 672 A.2d 480, 482 (1995). Rather, it is the failure to exercise even a slight degree of care and an indifference to the duty owed. *Id.*; see also *Rivard v. Roy*, 124 Vt. 32, 35, 196 A.2d 497, 500 (1963) (defining standard in similar terms under guest-passenger statute, since repealed). We have acknowledged, however, that there is no clear dividing line between ordinary and gross negligence; whether certain behavior was grossly negligent hinges on the particular circumstances of the case. *Hardingham*, 164 Vt. at 481, 672 A.2d at 483. Because such a finding requires applying the facts to a reasonableness standard, we defer to the fact finder's ability to determine whether particular behavior rose to the level of gross negligence. See *id.* at 487, 672 A.2d at 486 (Dooley, J., dissenting).

Additional deference is owed here because the action arose out of an administrative proceeding in which a professional's conduct was evaluated by a group of his peers. We will affirm the Board's findings as long as they are supported by substantial evidence, and its conclusions if rationally derived from the findings and based on a correct interpretation of the law. See *In re Southview Assocs.*, 153 Vt. 171, 177-78, 569 A.2d 501, 504 (1989). Evidence is substantial if, in looking at the whole record, see *Clark v. Weinberger*, 389 F. Supp. 1168, 1169 (D. Vt. 1974), *aff'd*, 511 F.2d 1390 (2d Cir. 1975), it is relevant and a reasonable person could accept it as adequate to support the particular conclusion. *In re McShinsky*, 153 Vt. 586, 589, 572 A.2d 916, 918-19 (1990); see *Livingston v. Arkansas State Medical Bd.*, 701 S.W.2d 361, 363 (Ark. 1986); *Homoly v. North Carolina State Bd. of Dental Examiners*, 479 S.E.2d 215, 217 (N.C. Ct. App. 1997). This Court may not substitute its own judgment for that of the Board. See *Schneider v. Vermont Employment Sec. Bd.*, 133 Vt. 187, 190, 333 A.2d 104, 106 (1975). Thus, we are concerned with the reasonableness of the Board's decision, not how we would have decided the case. See *Texas State Bd. of Dental Examiners v. Sizemore*, 759 S.W.2d 114, 117 (Tex. 1988), *cert. denied*, 490 U.S. 1080 (1989); cf. *Homoly*, 479 S.E.2d at 218 (board composed of licensed dental professionals best qualified to judge whether petitioner violated standard of care).

Upon review of the record, we conclude that the Board could reasonably find that Dr. Braun's behavior rose to the level of gross negligence. In arguing that the evidence was inadequate to support the finding, Dr. Braun focuses primarily on a statement by the State's expert that an adjustment to a patient's denture constitutes a "minor

version" of diagnosis. It is undisputed, however, that in the first month following removal of her teeth, H.D. returned twice for appointments, at least once complaining of pain, and both times Dr. Braun failed to meet with or examine his patient. Instead, he delegated this task to his dental assistant. On the first visit, H.D. complained of pain and the assistant, after removing the dentures, conferred with Dr. Braun in another area of the facility, passing along his observation that H.D.'s stitches had not yet been removed. At Dr. Braun's direction, the assistant modified the dentures on a lathe to remove an undercut. The same procedure occurred on the second visit, with patient contact solely between H.D. and the dental assistant, followed by consultation between the dental assistant and Dr. Braun in another part of the building. Not until more than a month following the extraction, when H.D. returned for an appointment again complaining of pain, was she examined by Dr. Braun. On the fourth visit, H.D. — still complaining of pain — was again seen only by the dental assistant. Although the patient came to Dr. Braun's office several times complaining of pain following the removal of twenty-three teeth, on only one occasion was she examined by him to determine the cause of her pain and discomfort.

In addition to the undisputed facts underlying the case, the Board heard expert testimony on the standard of care. The State's expert testified that H.D.'s sore spots could have been caused by a number of problems other than the denture, including osteonecrosis of the bone, a root tip, an abscess ulcer, or oral cancer, and that a technician is not trained to recognize such conditions. In effect, the expert stated, Dr. Braun allowed the assistant to determine the cause of the problem, and there was no way for Dr. Braun to ascertain whether that determination was correct. The expert testified that allowing an assistant to determine the cause of pain and the need to modify a denture, along with adjusting the denture itself, violates the statutory standard of care.

■■ As a body composed primarily of dental professionals, the Board has the power to apply its own expertise in evaluating the evidence. See *Briggs v. State Employees Retirement Comm'n*, 554 A.2d 292, 294-95 (Conn. 1989) (agency composed of physicians entitled to rely on its own expertise within area of professional competence). We conclude that there was sufficient evidence for the Board to find that Dr. Braun's failure to examine his patient after surgery, despite repeated complaints of discomfort, and instead, allowing his assistant to examine the patient, determine the nature of the problem, and

modify her dentures, amounted to a gross violation of the standard of care.

## II.

 Dr. Braun argues, however, that his actions cannot be cause for discipline because the statute and regulations allowed him to delegate the tasks for which he was disciplined. We disagree. In interpreting a statute, we rely on the plain meaning of the words because we presume they reflect the Legislature's intent. *Dover Town Sch. Dist. v. Simon,* 162 Vt. 630, 631, 650 A.2d 514, 516 (1994) (mem.). The statute that regulates dentists and dental assistants provides that certain tasks may not be assigned to any person other than a licensed dentist, including "[d]iagnosis, treatment planning and pre-scription." 26 V.S.A. § 864(b)(1); see also Rules of the Board of Dental Examiners, Rule 3.5, 9 Code of Vt. Rules 04125001-12 (1996) (same). "Diagnosis" is not defined in the statute or regulations, but has been described as the "identification of a disease or other underlying disorder through investigation of its manifestations"; as such, it is a problem-solving activity based, in part, on physical examination and observation over the course of the illness or disorder. 1 The Oxford Companion to Medicine 309 (John Walton et al. eds., 1986); see also Black's Law Dictionary 408 (5th ed. 1979) (medical term meaning determination of nature of patient's disease from study of symptoms); Black's Medical Dictionary 250 (34th ed. 1984) (diag-nosis involves weighing symptoms complained of and signs of disease found upon examination).

 In arguing that his assistant's actions were allowed under the law, Dr. Braun limits his characterization of the assistant's actions to altering H.D.'s dentures on a lathe. It is clear, however, that more than that was involved. On three of the four follow-up visits after receiving her immediate dentures, H.D. met only with the assistant to discuss how the dentures fit, and to complain of pain and discomfort. On at least one occasion, the assistant conducted an intraoral evaluation, removing the dentures and observing that H.D.'s stitches were still in place. Any subsequent modification of the dentures at Dr. Braun's direction was based either on the assistant's observations or on patient information relayed by the assistant. We agree with the Board's finding that an adjustment to an immediate denture must be based on evaluation of the patient's healing progress, and conclude that this process — conducted here by the dental assistant —

qualifies as a diagnosis. As such, it may not be performed by a dental assistant.

Nonetheless, Dr. Braun points to two provisions that he asserts allow him to delegate to dental assistants the tasks for which he was disciplined. The Board's rules allow a traditional dental assistant to "perform all extraoral duties in the dental office," while during "intraoral procedures, the . . . [a]ssistant may assist the [d]entist or clinical staff as assigned by the [d]entist." Rules of the Board of Dental Examiners, Rule 2.3(C)(2), 9 Code of Vermont Rules 04125001-3. We see nothing in this rule that would authorize a dental assistant to perform an intraoral examination and then consult with a dentist as a procedure for remedying the patient's complaint. Dr. Braun's attempt to characterize the assistant's actions as solely "extraoral duties" fails in the face of clear evidence of the need to examine the inside of the patient's mouth in order to diagnose and treat her discomfort.

Likewise, we are unconvinced by Dr. Braun's interpretation of other statutory language. We presume that the Legislature does not intend an interpretation that would lead to absurd or irrational consequences. *In re Judy Ann's Inc.*, 143 Vt. 228, 232, 464 A.2d 752, 755 (1983). Section 864(a) states that "[t]he performance of any intraoral tasks shall be under the direct supervision of the employer dentist." 26 V.S.A. § 864(a). Dr. Braun contends that this language allows a dental assistant to perform "any intraoral task" as long as the assistant acts under a dentist's direct supervision. This passage must be read, however, in conjunction with the passage immediately following, which lists tasks that "may not be assigned to a dental assistant" but must be performed by a licensed dentist only. *Id.* § 864(b). One of these tasks is "diagnosis," *id.*, which, as already explained, would preclude the assistant's actions here.

## III.

Dr. Braun next argues that he was given insufficient notice to prepare for and respond to the issues raised in the proceeding. He asserts that the Board's finding of misconduct was based on his failure to examine H.D. personally, although no such violation was charged. Notice of an investigation by a licensing board is adequate if it fairly apprises the person of the nature of the charges so he may prepare for the hearing and defend his position. See *Gaither v. Pennsylvania State Civil Serv. Comm'n*, 324 A.2d 872, 874 (Pa.

Commw. Ct. 1974); cf. *In re Twenty-Four Vt. Utils.*, 159 Vt. 363, 369, 618 A.2d 1309, 1312-13 (1992) (Court must examine whether parties were given adequate opportunity to prepare and respond to issues raised in proceeding).

In the amended charges, Dr. Braun was charged with violating the statutory standard of care set forth in 26 V.S.A. § 809(a)(21). The statement that he violated the standard of care "when he allowed his dental assistant" to perform certain duties specifically raised the issue of Dr. Braun's actions during H.D.'s time as a patient. Further, the charges alleging professional misconduct were filed directly against Dr. Braun; separate charges were brought against the dental assistant. This was sufficient to inform Dr. Braun that his role in H.D.'s care, including adequacy of care, and not merely the actions of his assistant, would be scrutinized by the Board. Cf. *Kollmorgen v. State Bd. of Medical Examiners*, 416 N.W.2d 485, 489 (Minn. Ct. App. 1987) (doctor improperly mischaracterized notice issue where prescribing medication by telephone was not independent ground for discipline; question of misprescription embraced many subissues to be evaluated before primary question of misconduct could be addressed).

## IV.

Finally, Dr. Braun asserts that the statute is unconstitutionally vague because, when read together with the rules, it appears to allow a dentist to delegate to a dental assistant those duties for which Dr. Braun was disciplined. We agree that "[a] statute must be sufficiently clear to give a person of ordinary intelligence a reasonable opportunity to know what is proscribed." *Brody v. Barasch*, 155 Vt. 103, 110, 582 A.2d 132, 137 (1990). The statute here declares that a dentist licensed in Vermont will be held to the degree of care and skill of the ordinarily skillful, careful, and prudent dentist engaged in similar practice under the same or similar conditions. 26 V.S.A. § 809(a)(21). More specifically, it clearly states that diagnosis, treatment planning, and prescription may not be delegated to a dental assistant. *Id.* § 864(b).

As we noted in *Brody*, it is not necessary, or possible, for a statute that regulates a professional field to detail each and every act that is prohibited. See *Brody*, 155 Vt. at 111, 582 A.2d at 137.

[A]ny board or body whose duty it is to pass upon the qualifications of licensees of the various professions . . .

must do so by applying some broad and necessarily general standards. Statutory language that conveys a definite warning as to proscribed conduct when measured by common understanding and practices will satisfy due process.

*Id.* The Board found that Dr. Braun violated the standard of care when he failed to examine his patient and instead delegated H.D.'s examination to his dental assistant. Personal attention to a patient's needs is a critical component of competent medical care. All tasks that qualify as diagnosis, treatment planning, and prescription are explicitly limited to licensed dentists. The statute is sufficiently clear to inform the ordinary person that a dentist must personally examine a patient complaining of pain to determine the cause of the disorder, and not delegate such a task to a dental assistant with only a subsequent consultation between the assistant and the dentist in another area of the building. The statute is not unconstitutionally vague.

*Affirmed.*