2003 VT 31

## OFFICE OF PROFESSIONAL REGULATION v. David M. McELROY

[824 A.2d 567]

No. 02-192

¶ 1. March 27, 2003. This is an appeal from an order by the Real Estate Commission (R.E.C.) reprimanding appellant, David McElroy, for engaging in conduct as a real estate broker without a license. After an appellate officer reversed the Commission's decision to reprimand, the State appealed to the Washington Superior Court pursuant to 3 V.S.A. § 130a(c). The superior court reinstated the Commission's reprimand, and this appeal followed.

¶ 2. McElroy contends that the stipulated facts do not support a finding that he was engaged as a real estate broker in a continuous course of conduct within this state without a license. We agree. We reverse the superior court's order and remand this issue for further findings of fact because the stipulated facts are insufficient to determine whether McElroy violated the statute as a matter of law. McElroy further contends that he had a First Amendment right to advertise a Vermont property and may not be reprimanded for doing so without a license. On this point, we agree with the trial court and affirm the finding that McElroy's First Amendment rights were not violated.

¶ 3. The stipulated facts state that McElroy "caused to be advertised and/or allowed his name to be used in the advertisement" of the sale of the Howard Johnson Inn in Rutland, Vermont between October 1999 and January 2000. Although McElroy was a licensed broker in other states, he did not obtain a broker's license from Vermont until February 1, 2000. Prior to obtaining his license, McElroy contacted potential purchasers and "was present" at the property in Rutland when the potential purchasers came to view the property. On February 6, 2000, one of the contacts bought the property. McElroy obtained his Vermont license before the closing, as he was "conscious of his obligation to receive a Vermont license prior to acting as a broker in Vermont."

¶ 4. The R.E.C. found that McElroy had violated R.E.C. Rules 2.1(a) and 2.1(b), which implement 26 V.S.A. §§ 2211-2212. These statutes prohibit unlicensed individuals from acting as real estate brokers within Vermont. The R.E.C. found that McElroy "advertised, negotiated, solicited and showed" the Vermont property, and therefore that his actions amounted to a continuous course of conduct within this state. See 26 V.S.A. § 2211(a)(4). McElroy appealed to the appellate officer of the Vermont Secretary of State, Office of Professional Regulation, who reversed the R.E.C. on the ground that the legislative history of 26 V.S.A. § 2211(a)(4) indicated that actions taken in furtherance of a single act or transaction were exempt from regulation. On appeal to the superior court, the court disagreed with the appellate officer's interpretation of the statute, which relied entirely on legislative history, because it was not based on the actual statutory language. No exemption for single acts or transactions was specified in the statute; therefore, the court found that the principal acts committed within the state — advertising within the state and appearing at the property with the potential buyers — were sufficient to represent a continuing course of conduct, as required by § 2211(a)(4).

¶ 5. We agree with the superior court that activities in furtherance of single transactions are not exempt from the statutory definition of real estate broker. *Id.* The statutory definition of real estate

broker sets forth the regulated conduct that the State put in issue:

> (4) "Real estate broker" ... shall mean any person who, for another, for a fee, commission, salary, or other consideration, or with the intention or expectation of receiving or collecting such compensation from another, engages in or offers or attempts to engage in, either directly or indirectly, by a continuing course of conduct, any of the following acts:
>
> (A) lists, offers, attempts or agrees to list real estate ...
> ....
> (C) offers to sell, exchange or purchase real estate ...
> (D) negotiates, or offers, attempts or agrees to negotiate the sale ...
> ....
> (F) advertises or holds himself ... out as being engaged in the business of buying, selling ... real estate ....

*Id.* § 2211(a)(4).

¶ 6. Nowhere in this section of the statute, or in § 2212, which prohibits actions taken by a "real estate broker ... within this state," is there an exemption for single transactions. The statutory language is broad in the scope of conduct it reaches, limited only by the requirement that there be a continuing course of conduct. The legislative history, which suggests that the Legislature was concerned about the scope of the statute reaching persons who were not actually in the real estate business and who might make only a single sale, is not necessarily inconsistent with the Legislature's plain language that the course of conduct must be continuing.

¶ 7. The trial court applied a highly deferential standard of review. The court noted that reviewing courts defer to an administrative agency's conclusions of law when these conclusions are "rationally derived from the findings and based on a correct interpretation of the law." *Braun v. Bd. of Dental Exam'rs,* 167 Vt. 110, 114, 702 A.2d 124, 126 (1997). This is a correct statement of the law. The trial court further found that additional deference is owed when, as here, "the action [arises] out of an administrative proceeding in which a professional's conduct [is] evaluated by a group of his peers." *Id.* We do not agree that the reasons that justified additional deference to the Board of Dental Examiners in *Braun* are present in this case. The Board in *Braun* was determining whether a fellow dentist's treatment of a patient amounted to gross negligence. *Id.* at 113, 702 A.2d at 126. A group of professional dentists is likely to have the background and expertise to decide what degree of care a dentist should exercise; furthermore, the group of professional dentists making up the Board of Dental Examiners would themselves be subject to the Board's rules and had no incentive to make these rules excessively strict or arbitrary. In contrast, the group of realtors comprising the R.E.C. in this case had no special competence in making the determination of whether McElroy's conduct was a continuing course of conduct under the statute, and because the R.E.C. is composed of realtors already having a Vermont license, the members of this regulatory board would not themselves be subject to the regulation that they were implementing. Cf. *Hughes v. Chapman,* 272 F.2d 193, 196 (5th Cir. 1959) (finding that real estate licensing laws are "highly penal, and therefore to be strictly construed"). Therefore, we will accord no "additional deference" to their interpretation of the statute at issue. The R.E.C., as an administrative body, is entitled to ordinary deference, however, meaning that we will accord deference to the R.E.C.'s interpretation of the real estate statutes where it represents a permissi-

ble construction of the statutes. See *Tarrant v. Dep't of Taxes*, 169 Vt. 189, 195, 733 A.2d 733, 738 (1999); see also *In re Agency of Admin.*, 141 Vt. 68, 76, 444 A.2d 1349, 1352 (1982) ("Where a statute is said to be susceptible of more than one meaning, and an agency seeks to define it, we will consult not only the bare statutory language, but will seek out the interpretation intended by the statute's drafters to assure that the statute is being construed, rather than constructed anew.").

¶ 8. The issue remains, however, whether or not McElroy's actions represented a continuing course of conduct within this state. Although each party claims the stipulated facts entitle it to judgment, we conclude that the facts are insufficient to decide the legal issue. See *Becerra-Jimenez v. I.N.S.*, 829 F.2d 996, 1001-02 (10th Cir. 1987) (noting that a reviewing court has inherent power to remand a cause to an administrative agency for "further proceedings to permit further evidence to be taken or additional findings to be made on essential points"). The State argues (1) that McElroy listed the property within this state by advertising in a national magazine circulated in Vermont, (2) that in that advertisement, he held himself out as a broker engaged in the business of real estate in this state, and (3) that he was physically present in Vermont to show the property. All of these allegations may be true, but one must draw a number of factual inferences from the stipulation to support the State's argument. The advertisement in which McElroy was alleged to have held himself out as a broker is not in the record. The number of times the advertisement appeared in Vermont is not in the record. The stipulation attempts to hedge on the factual issue of what McElroy was doing in Vermont at the Howard Johnson Inn with the potential prospects, although the strong inference is that he was showing the property, which may have included negotiations with respect to the sale of the property.

¶ 9. At the same time, these factual omissions do not help McElroy. He attempts to minimize his in-state conduct on appeal, arguing that he was not engaged in a continuous course of conduct. For example, McElroy argues he admitted to being "present" at the Howard Johnson Inn as opposed to "showing" the property, but he added no facts to the stipulation that would have demonstrated that he was not engaged in a broker's role when he was at the property in Rutland. Although he argues that advertising within the state and being "present" at the property are not sufficient to subject him to regulation, he readily concedes that he obtained a real estate broker's license so that he could close the deal. In other words, he apparently concedes that one further act in this state — the closing — would have subjected him to the jurisdiction of the Real Estate Commission, and therefore he took steps to obtain the license. According to the stipulation, what appears to have happened is that McElroy listed the property and then, because of a series of events over which he had no control, such as the availability of the necessary courses and examinations for licensure, his ability to be licensed was delayed. Nevertheless, he did obtain a license, which subjected his prelicense conduct to scrutiny by the R.E.C. 3 V.S.A. § 129a.

¶ 10. In view of the sparse stipulation, and the fact that this is a case of first impression, we decline to decide on the meaning of a continuous course of conduct until we have a more complete factual record. Our holding is only that McElroy is not relieved of regulatory requirements by virtue of the fact that only one transaction was involved.

¶ 11. McElroy also argues that his advertisement in a nationally circulated trade journal available in this state does not qualify as a continuing course of conduct within the meaning of the statute

because such a construction would restrain him from placing advertisements in violation of the First Amendment to the Constitution of the United States. He contends that the state has unconstitutionally restricted his commercial speech in violation of the United States Supreme Court's decision in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507 (1981) (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562-63 (1980)), and our own decision in *In re Deyo*, 164 Vt. 613, 614-15, 670 A.2d 793, 794-95 (1995) (mem.), applying the same analysis. The difficulty with McElroy's argument is that he has posed the wrong question. He is not being restrained from publishing advertisements; he is being restrained from publishing misleading statements about his own status as a broker. The statute prohibits him from holding himself out as a Vermont broker engaged in the real estate business without a license. If he has done so within this state, this action would contribute to a continuing course of conduct under the statute. Again, we decline to decide at this time whether placing the advertisements in question alone or in concert with other action within the state violated the relevant statutes. We find, however, that no constitutionally protected right has been violated.

*Reversed and remanded for further proceedings consistent with this order.*