Office of Professional Regulation v. Brooks, No. 397-7-01 Wncv (Teachout, J., Aug. 29, 2003)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
WASHINGTON COUNTY, SS.

OFFICE OF PROFESSIONAL )
REGULATION, )
  Appellant, )
   )  **Washington Superior Court**
  v. )  **Docket No. 397-7-01 Wncv**
   )
STEVEN BROOKS, )
  Appellee. )

**Opinion and Order**

Pursuant to 3 V.S.A. § 130a(c), the State appeals from the decision of an Office of Professional Regulation (OPR) appellate officer reversing a decision of the Board of Land Surveyors (the Board) to discipline licensee Steven Brooks. Oral argument was held on July 24, 2003. For the following reasons, the decision of the appellate officer is reversed.

Mr. Brooks is a Vermont licensed land surveyor. In 1999, a Mr. Surdam, Mr. Brooks' client, was preparing to sell property. His attorney discovered that twelve years earlier, a 1/2 acre portion of Mr. Surdam's property had been conveyed to a neighbor to resolve a boundary issue. No permits had ever been acquired for the conveyance of the half acre, and the conveyance was in violation of the town ordinance. Mr. Surdam asked Mr. Brooks how to fix the problem. Mr. Brooks contacted a local official who advised him to file a plan titled "boundary line adjustment," which must be signed and sealed by Mr. Brooks in order to conform to town regulations. Mr. Brooks' client requested that he do this as inexpensively as possible. Mr. Brooks then prepared and affixed his seal to a document entitled "Boundary Line Adjustment, Manson Surdam," which was signed by the zoning administrator and then filed in the Town of Williston land records.

This "Boundary Line Adjustment," which is at the heart of this case, depicts Mr. Surdam's property and the one half acre conveyed. Mr. Brooks performed no field work in the preparation of the document. He obtained all the perimeter data he used from a prior survey prepared by John Marsh, L.S., in 1986, revised in 1988, which was known by Mr. Brooks to contain a significant error. Specifically, Mr. Brooks knew that the bearings and distances on the Marsh survey did not form a closed geometric parcel. He made no attempt to resolve the error.

The document created by Mr. Brooks includes a set of notes disclosing, among other things, that: no field work was performed in the preparation of the document; all perimeter data is based on the Marsh survey; no data used in the Marsh survey was verified; and the Marsh survey contains an error which Mr. Brooks did not attempt to correct.   It bears Mr. Brooks' signature and seal.

A complaint was filed with the Board.  A Specification of Charges was filed alleging that the "Boundary Line Adjustment," and the process used to prepare it, violate minimum professional standards set out in the Board's rules.  The Board conducted a hearing.  In its decision, the Board concluded first that the "Boundary Line Adjustment" is a survey subject to the Board's minimum standards.  Conclusions of the Board ¶ B at 3.  The Board then concluded that Mr. Brooks violated the Rules of the Vermont Board of Land Surveyors 5.4 by "failing to prepare a survey abstract or perform any research or field investigation on the Surdam Survey." Conclusions of the Board ¶ C at 4.

Mr. Brooks appealed the Board's decision.  On appeal, he did not disagree that if the "Boundary Line Adjustment" is a survey, then it violates Board rules.  Rather, he argued that it is not a "survey" under 26 V.S.A. § 2502(3) (defining "land surveying") but another type of document, the purpose of which was limited to making a technical correction as an inexpensive remedy for a twelve year old permitting error.  Minimum standards applicable to land surveys, he argued, do not apply to a document prepared for this limited purpose.  He noted that the document itself discloses the limits on what he did and did not undertake in preparing it.  The appellate officer agreed, reversing the Board's decision.  The State then filed this appeal.

The fundamental issue on appeal is whether Mr. Brooks engaged in "land surveying" and prepared a land survey within the meaning of 26 V.S.A. § 2502(3).  There is no dispute that if he did so, he violated the minimum standards for land surveying, as he did not do any research or field investigation.

Professional boards are accorded a high degree of deference upon judicial review with respect to findings of fact.  Decisions construing legal standards are accorded deference to the extent they are consistent with the language and purpose of governing statutes.  "We will affirm the Board's findings as long as they are supported by substantial evidence, and its conclusions if rationally derived from the findings and based on a correct interpretation of the law."  Braun v. Board of Dental Examiners, 167 Vt. 110, 114 (1997).  Boards composed of peer professionals may be afforded additional deference on matters uniquely within their professional expertise if the  circumstances do not evince an incentive to reach an excessively strict or arbitrary result. See id. at 113-15; Office of Professional Regulation  v. McElroy, 2003 VT 31, ¶ 7 (discussing when boards should be afforded more than "ordinary" deference).  In this case, there is virtually no dispute of fact.  Whether Mr. Brooks engaged in land surveying and prepared a land survey is a mixed question of law and fact.  The conclusions of the peer professional board is instructive, but the court has an independent responsibility to construe the applicable statutes in accordance with their language and purpose.

"Land survey" is not defined in Title 26, Chapter 45 (Land Surveyors).  Its meaning is

derived in part from the statutory definition of "land surveying":

> "Land surveying" means the process of searching land records, applying the rules of evidence with respect to boundary law and applying the principles and methods of property measurement, all performed <u>for the purpose of</u>;
>
> > (A) determining the proper location of monumentation of property boundaries and establishing that monumentation;
> >
> > (B) determining the area of property within established boundaries; or
> >
> > (C) preparing written and graphic property survey descriptions for conveyancing.

26 V.S.A. § 2502(3) (emphasis added). The required components of a survey plat are established by Rules of the Vermont Board of Land Surveyors 5.5(D). These standards incorporate the requirements for a survey plat eligible to be recorded in the land records as set forth in 27 V.S.A. § 1403(b)(2)-(8).

In concluding that the "Boundary Line Adjustment" is a survey, the Board examined objectively the contents and use of the document:

> The document labeled State's Exhibit 1, "Boundary Line Adjustment, Manson Surdam" contains many elements required by 27 V.S.A. § 1403, Composition of Survey Plats and Board Administrative Rule 5.5(D), Survey Plats. Except for the notes in the upper-left hand corner, the document is a survey. The Board concludes that the notes do not serve to exempt this document from the requirements of a survey performed by a licensed land surveyor. State's Exhibit 1, on its face, has the appearance of being an actual survey.
>
> > . . . .
>
> The document prepared by the Respondent was titled like a survey, signed like a survey, sealed like a survey, and filed like a survey. Like a survey, it was prepared with the intent of depicting a transfer of property. It was filed on the Williston Town Records with the knowledge that town officials and the public would rely on it.

Decision of the Board 3-4.

In reversing the Board, the appellate officer focused on Mr. Brooks' statement about why he was preparing the document. Her analysis centered on whether this document was produced "<u>for the purpose of</u> . . . (C) preparing written and graphic property survey descriptions for conveyancing." 26 V.S.A. § 2502(3) (emphasis added). The pivotal point to the appellate

officer was that "the plat he prepared was not for the purpose of conveying the property depicted, but rather for the purpose of making the Town's 'paperwork line up' on a conveyance that had occurred some twelve years before." Decision of the Appellate Officer 7. The appellate officer concluded that Mr. Brooks had not engaged in land surveying, and that thus the plat prepared is not a land survey.

The Board's analysis and application of statutory standards is the one that is consistent with the purpose and meaning of both of the pertinent statutes: the one defining "land surveying" (26 V.S.A. § 2502(3)), and the one defining the requirements for a survey plat to be recorded in the land records ( 27 V.S.A. § 1403(b)). As the Board concluded, the entire purpose of the work was to "depict" a transfer of property. In other words, the work was undertaken for the purpose of creating a graphic depiction of a conveyance; therefore, it had to be done according to professional standards required for land surveying. The appellate officer misconstrued 26 V.S.A.§ 2502(3) by placing undue emphasis on the word "purpose," and she drew an unsound distinction between a <u>purpose</u> of "conveying" and a <u>purpose</u> of making "paperwork line up." Section 2502(3) defines "land surveying" more broadly than that. The definition refers generally to a process of searching the land records, applying evidentiary rules and legal doctrine, and applying principles and methods of measurement, all in connection with certain defined activities, one of which is preparing graphic survey descriptions for conveyancing. The public, which is otherwise unable to determine whether survey work has been done reliably or not, is protected by the requirements that licensees who engage in these activities are held to professional standards.

The statutory role of each of the three "purposes" set forth in 26 V.S.A. § 2502(3) is to identify the <u>reasons</u> for which professional land surveying is done, not to restrict the applicability of professional standards by <u>timing</u>. More particularly, the use of the phrase "for the purpose of preparing . . .graphic property survey descriptions for conveyancing" does not imply that a survey prepared *after* the conveyance it depicts is any less the product of land surveying than one prepared *prior* to the conveyance. Both are graphic descriptions of the conveyance. In this case, the initial conveyance without a permit created the need to make the "paperwork line up," calling for retroactively obtaining the permit that was not obtained previously. Whenever the work occurred, whether before or after the delivery and recording of the deed, it was still done for a conveyancing purpose, and the requirements under 27 V.S.A. § 1403(b) of a survey plat that will be recorded still have to be met. Those requirements call for professional standards of surveying under 26 V.S.A. § 2502(3) and Board rules.

Mr. Brooks argues that there should be allowance for a "partial survey," in which surveyors are permitted to do work of a limited nature. He argues that this is good public policy because it reduces cost to clients who have limited needs and are otherwise required to pay for a full survey. He cites to circumstances under which particular documents qualify for an exemption from the full requirements of 27 V.S.A. § 1403(b) for recorded documents. While there may be good policy reasons in support of such an allowance, the legislature has chosen not to permit an exemption for limited purpose plans of the type involved in this case. On the

4

contrary, the exemptions cited on behalf of Mr. Brooks are all statutorily created, confirming the principle that no exemption is available for a "partial survey" depicting a land conveyance.

Mr. Brooks' survey of Mr. Surdam's property was created to portray an unpermitted 12 year old conveyance that was being retroactively permitted. Mr. Brooks, in purporting to depict it on a survey plat submitted for recording, was representing that he had engaged in a land surveying process, which he had not. Notwithstanding that he disclosed the limitations of his work in preparing the plan, he was engaged in preparing a graphic description of a property conveyance without having done so in compliance with professional standards. His work thus constituted "land surveying" within the meaning of 26 V.S.A. § 2502(3) for the reasons described above, and the survey plat he created falls within the requirements of 27 V.S.A. § 1403(b) and the Board's rules.

The flaw in the reasoning of Mr. Brooks and the appellate officer is that "purpose" is not the same as "intent." Mr. Brooks and the appellate officer treated these concepts as the same, as if to say that because Mr. Brooks did not "intend" to do a complete survey out of a rationale that he was not doing it for a conveyancing purpose, he should not be held to the standards that would apply if he intended his work to be done for the purpose of conveyancing. Endorsement of this mode of analysis would change the statute from one defining land surveying by objective standards to one that relies on subjective intent in defining when a licensed professional is or is not engaging in professional work. It would allow any land surveyor to evade minimum standards merely by attaching a disclaiming note to the survey plan. As the Board noted at the outset of this case, such a practice would eviscerate the reason for having minimum standards at all.

> When a licensee's signature and seal are affixed to a document that is virtually indistinguishable from a survey plat, it should rightly carry some weight and significance. The public must be reasonably assured that a certain amount of professionalism and minimum standards have been met by the licensed land surveyor who files documents for permanent storage on the land records of this State.

Decision of the Board 4.

The Board's analysis of what constitutes "land surveying" under 26 V.S.A. § 2502(3) and a "survey plat" under 27 V.S.A. § 1403(b) as applied to the facts of this case is the correct one, as it is the one that is consistent with the statutory purpose of protecting the public through the application of objectively applied definitions and standards for licensed land surveyors.

The decision of the appellate officer is <u>reversed</u>. The Board's reprimand is reinstated.

Dated at Montpelier, Vermont this ___ day of August, 2003.

_____
Mary Miles Teachout
Superior Judge