# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1873

_____

Leslie Rae Young

*Plaintiff - Appellant*

v.

Pete Ricketts, Governor of the State of Nebraska, in his official capacity, et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: December 15, 2015
Filed: June 9, 2016

_____

Before WOLLMAN, LOKEN, and BYE, Circuit Judges.[1]

_____

LOKEN, Circuit Judge.

Leslie Rae Young is a California resident and a licensed real estate broker in that State but not in Nebraska. In March and July 2010, the Director of the Nebraska Real Estate Commission ("the Commission") issued Young letters stating that she

---

[1]This opinion is being filed by Judge Wollman and Judge Loken pursuant to 8th Cir. Rule 47E.

was advertising real property located in the State of Nebraska for sale on www.ForSaleByOwner.com, which is linked to www.eList.me, and on REALTOR.com, without securing a Nebraska real estate broker's license, and ordering Young to "cease and desist from any and all conduct which requires a real estate broker's, associate broker's, or salesperson's license in the State of Nebraska." Without exhausting state law remedies, Young commenced this 42 U.S.C. § 1983 action against Nebraska officials in their official capacities. She seeks prospective relief declaring that provisions of the Nebraska Real Estate License Act (the "License Act"), Neb. Rev. Stat. §§ 81-885.01 to 81-885.55, "facially and as interpreted and applied by Defendants," violate her rights under the First Amendment and the Due Process, Equal Protection, and Privileges or Immunities Clauses, as applied to the States by the Fourteenth Amendment, and enjoining Defendants "from enforcing [those provisions], as well as any and all implementing rules and regulations and the policies and practices by which Defendants enforce these provisions."

The district court[2] stayed the action because Young had not appealed the orders to the Commission and sought judicial review of an adverse decision in state court. See Neb. Rev. Stat. §§ 81-885.25-30, 84-917(2). Young moved for relief from that order, conceding that the time for requesting administrative review had expired, and that she "does not contest" the Commission's determination that she "was engaged in 'brokerage'" of Nebraska properties. The district court lifted the stay and, after extensive discovery, granted Defendants' motion for summary judgment. Young appeals the dismissal of her constitutional claims. Reviewing constitutional questions and the grant of summary judgment *de novo*, we affirm. See Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002) (standard of review).

---

[2] The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

# I. Background.

**A.** At the time in question, Young as a licensed California real estate broker was a member of and had access to all 66 Multiple Listing Service ("MLS") databases in California. MLSs are private databases of individual properties created and maintained by real estate professionals -- primarily licensed real estate brokers -- to help their clients buy and sell real estate. Only MLS members can place property listings in the databases. REALTOR.com is the official nationwide website of the National Association of Realtors. It displays information about properties for sale in Nebraska and elsewhere. Only properties listed in an MLS database can be placed on REALTOR.com. Young summarized her economic activity that gave rise to this dispute in her First Amended Complaint and Exhibit A to that Complaint:

> 17. In 2008, Ms. Young created Elist.me for the purpose of providing property advertising services to home owners around the country who want to sell their properties online without the assistance or cost of a real estate broker.
>
> 18. In 2008, Ms. Young entered into a contract with ForSaleByOwner.com ["FSBO"] to provide advertising services to [FSBO's] clients.[3] A true and correct copy of that contract is attached as Exhibit A.
>
> 19. Under the terms of that contract, Ms. Young agreed to enter pictures and other information about [FSBO's] clients' properties into the database operated by Elist.me, which is then fed to [FSBO] and other websites that advertise homes and other real estate for sale by owner. Ms. Young charges [FSBO] a flat fee of $95 per-property for these services, not a commission,

---

[3]Owned by the *Chicago Tribune*, FSBO "publishes an internet website that advertises properties for sale [and] charges a flat fee to property owners who wish to advertise and sell their homes without incurring the substantial cost typically incurred by retaining a real estate agent." Forsalebyowner.com Corp. v. Zinneman, 347 F. Supp. 2d 868, 870 (E.D. Cal. 2004).

which is paid whether or not an advertised house sells, and without regard to how much it sells for.

The contract between FSBO and Young identified her company as "MLS Provider," "a licensed real estate brokerage firm that specializes in listing properties on the Multiple Listing Service" in its local markets. The contract provided in part:

> *Realtor.com Product.* FSBO may make available to FSBO Customers a Service that enables the Listing of a FSBO Customer to appear on Realtor.com by placing the Listing on an MLS outside the geographic area of the Listing (the "Realtor.com Product"). MLS Provider [Young] will be the exclusive provider of the Realtor.com Product to FSBO and the FSBO Customers . . . . MLS Provider will ensure that such Listings [for example, "Listings" of FSBO Customer properties in Nebraska] are placed in an MLS that is outside the geographic area of the Listing such that agents in the geographic area of the Listing would not see such Listing in the MLS related to such geographic area. FSBO shall pay MLS Provider $95 for each Listing placed on an MLS . . . .

The Agreement provided that "Broker [Young] will add Seller's contact number to the Broker's phone system. It is Seller's sole responsibility to follow up with any and all inquiries."

It is undisputed that Young entered into nearly thirty "Property Agency Listing Agreements" with Nebraska residents who were FSBO customers. Each agreement identified Young or eList.me as "Broker" and her client as "Seller," listed specific Nebraska real estate for sale, and stated that "Seller is hiring Broker to submit the property . . . to an out-of-area MLS for the purpose of advertising as a showcase listing on the national website Realtor.com." Young entered property information provided by Nebraska Sellers into California MLS databases, which then became REALTOR.com listings accessible to buyers and agents in Nebraska. The listings identified Young as "advertising broker" or "agent," and encouraged viewers to "Email Agent," view "Agent's Other Listings," and call "Leslie Young, Advertising

Broker" for "Information and Showings." However, consistent with the Listing Agreement, the phone number provided was the Seller's "contact number," not Young's. Young's eList.me company website stated, "We are a Leading Online Advertiser providing UNSURPASSED Internet exposure!"

The summary judgment record includes undisputed evidence that Young was in direct communication with her Nebraska client Sellers. She told one client:

> When buyers write or call for information, most do not have agents representing them. You will want to contact the buyer quickly BEFORE THEY HIRE a local agent to represent them. This gives the seller an opportunity to sell their property without paying a commission to the buyer's broker.

Another emailed Young, "Thank you for all your help managing our home for sale." Young signed her emails to Sellers as "Leslie Young, Broker," or "Leslie Young, Advertising Broker." Young was the only person with access to change and remove the Nebraska listings on REALTOR.com.

**B.** The License Act provides that it is unlawful for a non-exempt person "directly or indirectly, to engage in or conduct, or to advertise or hold himself or herself out as engaging in or conducting the business, or acting in the capacity, of a real estate broker, associate broker, or real estates salesperson within this state without first obtaining a license" from the Commission. Neb. Rev. Stat. § 81-885.02. Acting as a broker without a license subjects the violator to civil sanctions imposed by the Commission, including a cease and desist order, § 81-885.03. Section 81-885.01(2) "defines" broker to include:

> any person who, for any form of compensation or consideration or with the intent or expectation of receiving the same from another, negotiates or attempts to negotiate the listing, sale, purchase, exchange, rent, lease,

or option for any real estate or improvements thereon, or assists in procuring prospects or holds himself or herself out as a referral agent for the purpose of securing prospects for the listing, sale, purchase, exchange, renting, leasing, or optioning of any real estate . . . or holds himself or herself out as engaged in any of the foregoing.

Persons performing covered acts with reference to property they own or lease are exempt. § 81-885.04(1). As a real estate broker licensed in another State, Young can obtain a nonresident broker's license by taking a three-hour correspondence course, paying a license fee, passing a criminal background check, and obtaining errors and omissions insurance. § 81-885.17.

Commission Director Greg Lemon testified that the Commission issued cease and desist orders due to Young's Nebraska listings on MLS and REALTOR.com:

Q. What is a listing?

A. A listing is not specifically defined in [the] Nebraska statute, but in industry usage, generally, a listing refers to a situation where a real estate broker has a contract to assist someone in the sale of property or lease.

\* \* \* \* \*

Q. So does marketing properties require a real estate broker's license?

A. No. Not in and . . . of itself in all instances.

Q. Okay. Well, what kind of marketing would require a license?

A. If you are marketing for a third party for a fee and you are representing yourself out as the intermediary third party. If you're simply conveying information as a newspaper or a website and you are the medium used for that, that doesn't require a license.

* * * * *

A. . . . The MLS is the Multiple Listing Service which connot[]es that something on there is a listing which is a property where a third-party broker is assisting someone in the sale of property; so if they're marketing through the MLS, it would appear that there is brokerage activity being conducted. . . .

You asked me if you were simply paid to put [property] on the MLS would that be an activity requiring a license. No, it would not, but in the normal course and scope of things, if you were doing that, as I stated earlier, the MLS rules state that you're supposed to be someone with an agency relationship representing someone . . . .

Q. Do you know whether all MLSs require you to be a real estate broker to put a property on the MLS?

A. Yes, they do.

* * * * *

Q. . . . [W]hat about this advertisement [on REALTOR.com] indicated that Leslie was acting as a real estate broker?

A. . . . [I]t's a Nebraska property. . . . [I]t says, "Presented by Leslie Young." . . . [I]t's on REALTOR.com which, as I've discussed before, is a website for licensees that have listings. . . . And . . . the reference to the phone number and "e-List me. Call 877" which, I believe, is the company of Leslie Young.

* * * * *

A. On the Nebraska property in question . . . Ms. Young is listed as the broker on the website as well as showing her "presenting" property . . . . It logically follows from this that Ms. Young is holding herself out as the broker for the sale of the Nebraska real estate in question here. Regardless of the reference to advertising . . . . On the

plain meaning of the term, if one is publicly represented as a broker, I would say that's holding one's self out as a broker.

**C.** Young argues that numerous provisions of the License Act are unconstitutional. She does not challenge the terms of the Commission's cease and desist orders. Indeed, her failure to exhaust administrative and judicial remedies under state law would foreclose any such challenge. Her initial Complaint alleged that a License Act amendment violated the due process limits of Nebraska's long-arm-jurisdiction authority by providing that the performance of "any single act" covered by § 81-885.01(2) "shall constitute sufficient contact with the state for the exercise of personal jurisdiction over such person in any action arising out of such action." § 81-885.03(1). But she has abandoned that claim.

## II. First Amendment Claims.

Young's primary argument on appeal is that "FSBO advertising is fully-protected First Amendment speech," and therefore requiring Young to get a license is a content-based prior restraint on her First Amendment rights. In support, she cites a host of First Amendment precedents that dealt with direct restrictions on speech and expressive activities, including commercial advertising. See, e.g., Thompson v. W. States Med. Ctr., 535 U.S. 357 (2002); Peel v. Att'y Regis. & Disciplinary Comm'n of Ill., 496 U.S. 91 (1990). But no direct restriction of speech is at issue here. The Commission has not declared that Young may not advertise in any manner she chooses. Rather, it has determined that the "advertising" she has done for her Nebraska FSBO Customers established that she engaged in the business of real estate broker, for compensation, without the license required by the License Act.

Long ago, the Supreme Court noted that "it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of

-8-

language, either spoken, written, or printed." Rumsfeld v. Forum for Acad. & Inst'al Rights, Inc., 547 U.S. 47, 62 (2006), quoting Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 502 (1949); see Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 456 (1978) (upholding attorney licensing laws that restrict solicitation of clients); Thomas v. Collins, 323 U.S. 516, 545 (1945) (Jackson, J., concurring). This principle applies and is controlling. As the district court concluded:

> the Court finds this case is not about the First Amendment freedom of speech. This case is about regulating brokers of real estate transactions. The facts as set forth herein clearly show plaintiff met the definition by her actions of acting as a real estate broker via the language she used in the listing agreements. As such, she is subject to the regulatory scheme set forth by the Nebraska Unicameral [legislature].

See Office of Prof'l Regulation v. McElroy, 824 A.2d 567, 571 (Vt. 2003) (rejecting a First Amendment challenge to the Vermont real estate broker licensing statute because plaintiff "is not being restrained from publishing advertisements; he is being restrained from publishing misleading statements about his own status as a broker").

To be sure, Young's contention that the License Act unconstitutionally restricts advertising protected by the First Amendment requires a close look at the facts. In Zinnemann, for example, California authorities argued that FSBO's website, which simply lists properties for sale by owner and other general information, required FSBO to obtain a California real estate broker's license. 347 F. Supp. 2d at 870-71. The court concluded that California's licensing laws were not a prior restraint on speech and did not implicate "commercial speech."[4] But it granted summary judgment in favor of FSBO because of its First Amendment interest in disseminating

---

[4]Commercial speech is "expression related solely to the economic interests of the speaker and its audience." Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 561 (1980).

information on its website and the fact that "Defendants have not shown any compelling state interest in requiring a real estate broker's license for FSBO's website *but not for virtually identical newspaper websites*." Id. at 879 (emphasis added).[5]

This distinction was more thoroughly explained in Justice White's concurring opinion in Lowe v. SEC, 472 U.S. 181, 229-32 (1985):

> [T]he principle that the government may restrict entry into professions and vocations through licensing schemes has never been extended to encompass the licensing of speech *per se* or of the press.
>
> \*   \*   \*   \*   \*
>
> The question whether any given legislation restrains speech or is merely a permissible regulation of a profession is one that we ourselves must answer if we are to perform our proper function of reviewing legislation to ensure its conformity with the Constitution.
>
> \*   \*   \*   \*   \*
>
> One who takes the affairs of a client personally in hand and purports to exercise judgment on behalf of the client in the light of the client's individual needs and circumstances is properly viewed as engaging in the practice of a profession. . . . If the government enacts generally applicable licensing provisions limiting the class of persons who may practice the profession, it cannot be said to have enacted a limitation on freedom of speech or the press subject to First Amendment

---

[5]Although facial challenges are generally disfavored, "a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers," so long as the licensing law has "a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of . . . censorship." City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 759 (1988).

-10-

scrutiny. Where the personal nexus between professional and client does not exist, and a speaker does not purport to be exercising judgment on behalf of any particular individual with whose circumstances he is directly acquainted, government regulation ceases to function as legitimate regulation of professional practice with only incidental impact on speech; it becomes regulation of speaking or publishing as such, subject to the First Amendment's command . . . .

The summary judgment record makes clear that Young failed to prove that the Nebraska License Act, on its face, was "regulation of speaking or publishing as such," rather than legitimate regulation of the real estate broker profession (which Young concedes is subject to licensing by the States). As Director Lemon explained in the above-quoted portions of his lengthy deposition, Young did far more than publish advertisements of properties for sale by owner. She entered into Listing Agreements with FSBO customers; used her status as a licensed California broker to place their "listings" on MLS and REALTOR.com databases not otherwise available to for-sale-by-owner properties; and worded those listings in a manner that told potential Nebraska buyers and their agents that the property seller was represented by a broker.

At a minimum, Young was a "broker" within the meaning of § 81-885.01(2) because she held herself out as one who was "listing" property for compensation. See Accountant's Soc'y of Va. v. Bowman, 860 F.2d 602, 605-06 (4th Cir. 1988) (holding that the phrase "public accountant" is misleading if used by people other than "certified public accountants"); Liberty Coins, LLC v. Goodman, 748 F.3d 683 (6th Cir. 2014) (rejecting a facial First Amendment challenge to licensing provisions of the Ohio Precious Metals Dealers Act), cert. denied, 135 S. Ct. 950 (2015). She also provided individualized advice and services to her FSBO Customer clients. The fact that her services were attractive to some Nebraska sellers because she charged a $95 flat fee, rather than the more substantial commission commonly charged by licensed

-11-

Nebraska real estate brokers, does not make her conduct any less subject to Nebraska's licensing requirements.

Young's contention that the License Act violates the First Amendment because it is vague and overbroad is without merit. "For a statute to be vulnerable on overbreadth grounds, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." Nat'l Fed'n of the Blind of Ark. v. Pryor, 258 F.3d 851, 856 (8th Cir. 2001), quoting City Council v. Taxpayers for Vincent, 466 U.S. 789, 801 (1984); see Bates v. State Bar of Ariz., 433 U.S. 350, 380 (1977) ("the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context"). For Young "to have standing to challenge the statute as vague, the statute must be unconstitutional as applied to [her] specific conduct at issue," which it is not. Musser v. Mapes, 718 F.3d 996, 1000 (8th Cir. 2013).

### III.  Other Fourteenth Amendment Claims.

Our conclusion that the License Act does not restrict speech contrary to the First Amendment forecloses her other facial attacks on the statute. "The fact that the [License Act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." United States v. Salerno, 481 U.S. 739, 745 (1987).

A.  Due Process and Equal Protection.  Young argues that the License Act violates the Due Process and Equal Protection Clauses because it is irrational to make her get a license when licensed brokers may not conduct her business of advertising FSBO properties; because the statute prohibits unlicensed brokers from advertising FSBO properties, even though owners may advertise their own properties; and because it is irrational to require her to attend a Nebraska broker licensing course that

includes almost no training and testing relevant to advertising and extensive education on matters unrelated to her business. We note these are all as-applied challenges to the fairness and rationality of the License Act if it applies to those who simply advertise FSBO properties. But Young is subject to the Act's licensing requirements because she held herself out as and acted like a real estate broker, not merely an advertiser of real estate properties. Thus, these contentions fail to show that "no set of circumstances exists under which the Act would be valid." Salerno, 481 U.S. at 745.

The License Act is rationally related to the legitimate State interest in ensuring the competency and honesty of those who hold themselves out as providing professional brokerage services to the sellers and buyers of Nebraska real estate. One can argue that the manner in which the License Act furthers that interest is too costly, too parochial, or fails to effectively serve those who prefer to sell their own properties. But those are legislative issues that do not cast doubt on the facial validity of the statute Nebraska's legislators have found appropriate.

B. Privileges or Immunities Clause. Finally, Young argues that the License Act infringes on her right to practice her chosen profession, as that right is constitutionally protected by the Privileges or Immunities Clause. This argument is foreclosed by the Slaughter-House Cases, 83 U.S. (16 Wall.) 36, 78-79 (1872). See Merrifield v. Lockyer, 547 F.3d 978, 984 (9th Cir. 2008) ("Given the Slaughter-House Cases limitation . . . we cannot grant relief based upon that clause unless the claim depends on the right to travel.").

For the foregoing reasons, the judgment of the district court is affirmed.

_____