2009 VT 105

### Jacqueline LICHTENBERG v. OFFICE OF PROFESSIONAL REGULATION

[987 A.2d 322]

No. 08-384

¶ 1. November 3, 2009. Respondent Jacqueline Lichtenberg, a licensed clinical social worker, appeals from a Washington Superior Court order affirming a hearing officer's finding that she engaged in unprofessional conduct. Respondent contends that the evidence was insufficient to support the finding. We agree, and therefore reverse.

¶ 2. The material facts are largely undisputed. Respondent is a licensed clinical social worker who has practiced for many years in the Brattleboro area, providing individual, joint, and family therapy to children, adolescents, and adults. In October 2004, the divorced parents of a seven-year-old girl engaged respondent to provide psychotherapy services for the child. Under the terms of a Massachusetts divorce judgment, mother had primary physical custody of the child, father — who at all relevant times lived in Virginia — was afforded periodic visitation in both New England and Virginia, and the parents shared legal custody.

¶ 3. Mother subsequently moved to Keene, New Hampshire, where she filed an action in the superior court to address an ongoing dispute with father over visitation and related issues. Despite the move, respondent continued to see the child, both individually and with one or both of the parents. Respondent testified that she met with father five times over the course of her professional counseling relationship with the family and spoke with him on the telephone at least fifteen times. Respondent testified further that, in the course of her meetings and conversations with father, she addressed a number of issues concerning visits with the child, formulated a number of opinions about how to improve the quality of those visits, and conveyed specific recommendations to father. The recommendations addressed issues concerning the optimal location for the visits and ways that father could reduce certain fears and anxieties that the visits had caused the child. Respondent recalled that she made specific recommendations to father on a number of subjects, including a certain game that father had played with the child, nudity and sleeping arrangements in father's home, the need to refrain from talking to the child about certain sensitive subjects, and generally about father's need to obtain more information relating to child development.

¶ 4. Respondent further recalled that she had initially declined a request for information from the child's court-appointed guardian ad litem (GAL) in the New Hampshire proceeding until the GAL obtained a waiver for release of the information.[1] The GAL subsequently transmitted a waiver to respondent, signed by father, authorizing respondent "to release to [the GAL] any and all information about my daughter . . . and her relationship with me and her mother . . . . I specifically authorize [the GAL] to make notes or to photocopy any and all information which she may believe to be necessary. I also authorize [the GAL] to discuss any information that I have given her." Respondent maintained that all of the recommendations set forth in her subsequent letter to the GAL,

---

[1] This was consistent with a provision in the "policy statement" that respondent routinely gave to her clients indicating that in the case of "conjoint therapy" she would not release information without permission from all of the persons involved.

following the receipt of father's waiver, were matters that she had previously discussed with him. The letter, dated August 4, 2005, set forth six separate recommendations relating to father's continued visitation with the minor, including the need to eliminate certain topics of conversation, to meet with a parental educator to learn about children's developmental stages, to resume visits in Virginia only upon the recommendation of father's counselor, to confine visits in New Hampshire to places familiar to the minor, and to meet with respondent during father's trips to New Hampshire.

¶ 5. Respondent testified that she received a second request from the GAL for information and sent a follow-up letter in response, dated December 9, 2005. In this letter respondent expressed concern that a number of her earlier recommendations had not been met, reaffirmed her earlier recommendations, reiterated her desire to meet with father during visits to New Hampshire, addressed the schedule for summer and holiday visits, and underscored the minor's need for privacy during visits with father. Father sent follow-up releases to respondent in July and October 2006, authorizing respondent to release treatment notes and information relating to the minor and father to the New Hampshire court. Sometime toward the end of 2006 or the beginning of 2007, however, father requested that respondent terminate therapy with the minor, and her counseling relationship with the family ended as a result. Respondent testified that her sole purpose in responding to the GAL's requests for information was to protect the interests of the minor, and that in so doing she was acting in a manner fully consistent with the standards of practice in her profession.

¶ 6. In June 2007, the State filed an amended specification of charges against respondent with the Office of Professional Regulation. Although the initial complaint against respondent apparently concerned her alleged failure to provide father with a timely copy of her original letter to the GAL, the amended charges also alleged a failure to anticipate and minimize a conflict of interest among the individuals receiving services and the risk of performing conflicting roles, such as testifying in a custody dispute, in violation of the National Association of Social Workers (NASW) Code of Ethics and 26 V.S.A. § 3210(a)(12).[2] An evidentiary hearing before an administrative law officer (ALO) was held in October 2007, and a written decision issued later that month.

¶ 7. Among its findings and conclusions, the ALO observed that respondent was a "caring, competent Clinical Social Worker . . . dealing with a difficult case" of a family engaged in a contentious and ongoing custody and visitation dispute; that respondent had attempted to improve father's relationship and visits with the minor despite conduct — including harassing and intimidating phone calls — that made him difficult to work with; and that her "intentions were to further the best interests of her child client throughout." Nevertheless, the ALO concluded

_____

[2] This section, which appears to be closely modeled on the equivalent provision in the NASW Code of Ethics, defines unprofessional conduct in part as:

> failing to clarify the clinical social worker's role with the parties involved and to take appropriate action to minimize any conflicts of interest, when the clinical social worker anticipates a conflict of interest among the individuals receiving services or anticipates having to perform in conflicting roles such as testifying in a child custody dispute or divorce proceedings involving clients.

26 V.S.A. § 3210(a)(12).

that respondent committed unprofessional conduct "when she failed to be alert to a possible conflict and a violation of neutrality which could have a negative impact on her therapeutic role with the father and ultimately the child," in violation of Ethical Standard 1.06(a) of the NASW Code of Ethics, which provides, in part, that "[s]ocial workers should be alert to and avoid conflicts of interest that interfere with the exercise of professional discretion and impartial judgment." The ALO further concluded that respondent "should have taken steps to clarify [her] role with both parents" and "take[n] appropriate action to minimize any conflict of interest," as required by Ethical Standard 1.06(d) and 26 V.S.A. § 3210(a)(12). Such steps, the ALO found, could have included using a more "fully informed release of client information signed by both parties, facilitating the parents in providing the recommendations directly to the GAL, resisting the request from the GAL without a court order, and withdrawing from treatment with a proper referral to another therapist."[3]

¶ 8. The ALO imposed an administrative penalty of five hundred dollars and conditioned respondent's social work license upon her completion of a professional ethics course focused on conflicts of interest. As noted, the superior court affirmed the ALO's decision. This appeal followed.

¶ 9. The standard of review governing appeals of this nature is settled. "Where there is an intermediate level of appeal from an administrative body, we review the case under the same standard as applied in the intermediate appeal." *Tarrant v. Dep't of Taxes*, 169 Vt. 189, 195,

733 A.2d 733, 738 (1999). As we recently explained in *Devers-Scott v. Office of Professional Regulation*, we "review the ALO's decision independent of the superior court's findings and conclusions." 2007 VT 4, ¶ 4, 181 Vt. 248, 918 A.2d 230. "The statute simply gives parties two appeals." *In re Town of Sherburne*, 154 Vt. 596, 604, 581 A.2d 274, 278 (1990).

¶ 10. As we further noted in *Devers-Scott*, "[t]he scope and character of our review of ALO and board decisions varies depending on the character of the proceedings below and the particular expertise of the fact-finder." 2007 VT 4, ¶ 5. Thus, as we held in that case, when reviewing a decision by an ALO with no special expertise in the respondent's profession "the ALO's interpretations of the [professional] statutes and rules are entitled to no deference and will be reviewed de novo." *Id.* ¶ 9. Of course, we continue to defer to an administrative tribunal's factual findings if "supported by substantial evidence," *Braun v. Bd. of Dental Exam'rs*, 167 Vt. 110, 114, 702 A.2d 124, 126 (1997), and we will not "reweigh conflicting evidence." *Devers-Scott*, 2007 VT 4, ¶ 6.

¶ 11. We observe at the outset here that, despite the State's claims to the contrary, the ALO did not find that respondent engaged in unprofessional conduct per se in providing recommendations to the GAL, nor was there any finding that respondent revealed client confidences outside the scope of father's release.[4] The ALO's finding of unprofes-

---

[3] The ALO found that the State had not carried its burden of proof on the charge that respondent failed promptly to make available to father the August 4, 2005, letter to the GAL. The State has not challenged this finding on appeal.

[4] Although respondent argues that she owed no duty of confidentiality or loyalty to father because it was the child who was the actual patient or client, we need not address this particular issue in light of our holding that respondent breached no duty or standard of practice in any event. We note that respondent herself testified that she considered her relationship with father to be "therapeutic in nature," that

sional conduct was predicated upon the more narrow ground that respondent failed to be "alert to" and take steps "to minimize" a potential conflict with father arising from her recommendations to the GAL, and the potentially negative impact on the therapeutic relationship with him and ultimately with the child. As noted, the ALO listed several steps that respondent could have taken "to minimize" the conflict, such as utilizing a more "fully informed release," asking father to provide the recommendations directly to the GAL, declining the GAL's request for recommendations, or terminating the counseling relationship. These findings appear to have been based upon the testimony of the State's expert witness, an experienced social worker, who stated her opinion that therapists should generally not respond to requests for information from a GAL in these circumstances because it risks alienating one or more of the family members, and that it would be better for the parents to voluntarily disclose the therapist's recommendations to the court. It appears that the ALO also relied on respondent's expert witness, who acknowledged that "if a therapist anticipates that there is going to be a conflict of interest, then he or she should discuss it with all parties involved."

¶ 12. Notably, the State's expert witness did not offer an opinion addressed to the particular circumstances presented here, in which a parent has specifically authorized a therapist who has been providing family-counseling services to release to a GAL, in a pending judicial proceeding, "any and all information about my daughter . . . and her relation-

---

the "patient" testimonial privilege is broadly defined to extend to any "person who consults or is examined or interviewed by a physician, dentist, nurse, or mental health professional," V.R.E. 503(a)(1), and that the latter specifically includes social workers. V.R.E. 503(a)(5).

ship with me," to make notes or photocopy all such information that "she may believe to be necessary," and "to discuss any information that I have given her." The closest the expert came to addressing this precise circumstance was on cross-examination, when asked whether she was "aware that the father requested the social worker to give this information to the guardian ad litem" and whether this would change her opinion. The expert, clearly unaware of father's earlier release, responded, "You know, this is, this is new news," but an interruption led to other questions and the expert never responded directly to the question whether a request from father to provide the information to the GAL would have changed her opinion.

¶ 13. We find nothing in the record, therefore, in the nature of a clear expert opinion that respondent committed unprofessional conduct in communicating to the GAL a set of recommendations concerning father's interactions with the child that respondent had previously discussed with father, pursuant to father's express consent to release "any and all information" concerning the child and "her relationship" with father. Although the ALO found that respondent might have crafted a "more fully informed release," we have difficulty conceiving of language that could have been any clearer or more precise than that to which he agreed. Moreover, in light of father's express authorization of the GAL "to discuss any information" she obtained pursuant to the release, and the plain fact that the GAL was seeking information to assist the court in resolving a visitation dispute, there is no reasonable likelihood that father was unaware of the uses to which the information could be put. Hence, we can find no basis for the conclusion that respondent breached a duty to father to explain or "clarify" such uses or to somehow "minimize" any strain that it might put on their relationship.

¶ 14. While respondent might conceivably have responded differently to the GAL's requests, or pursued one of the alternative approaches identified by the ALO, the record does not demonstrate that the course she chose violated the standards of her profession. Courts have long recognized the necessity to "show deference to the judgment exercised by a qualified professional," *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982), and it is therefore "not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Id.* at 321 (quotation omitted). Viewed in its entirety, we are unable to conclude that the record here shows anything other than a conscientious application of professional judgment in dealing with the challenging, although not especially unique, dynamics of providing counseling to a family in conflict. Accordingly, we conclude that the finding of unprofessional conduct must be reversed.

*Reversed.*