STATE OF VERMONT

SUPERIOR COURT                                    ENVIRONMENTAL DIVISION
                                                  Docket No. 36-3-18 Vtec

| | |
|---|---|
| VTRE Investments CU | DECISION ON THE MERITS |

In this on-the-record proceeding, Montchilly, Inc. ("Montchilly") appeals a February 27, 2018 decision of the Town of Stowe Development Review Board ("DRB") approving with conditions a conditional use application submitted by VTRE Investments LLC ("VTRE").

Montchilly is represented in this matter by Russell D. Barr, Esq.  VTRE is represented in this matter by Stephen F. Coteus, Esq.  The Town of Stowe ("Town") is represented by Joseph S. McLean, Esq.[1]

**Standard of Review**

In an on-the-record appeal, the Court considers only the decision below, the record made before the municipal panel, and the briefs submitted by the parties.  In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.).  We do not take new evidence or make our own factual determinations.  Instead, we review the municipal panel's factual findings to determine whether the decision below "explicitly and concisely restate[s] the underlying facts that support the decision."  See 24 V.S.A. § 1209(a)—(b).

The Court will affirm factual findings only if they are supported by substantial evidence in the record below.  See In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 76, 186 Vt. 568.  In examining whether the is substantial evidence in the record, the Court does not assess credibility of witness testimony or reweigh conflicting evidence in the record.  See Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248; In re Appeal of Leikert, No. 2004-213, slip op. at 2 (Vt. Nov. 2004) (unpublished mem.).  The Court simply looks to whether the record includes relevant evidence that "a reasonable person could accept . . . as adequate"

---

[1] The Town has not submitted a brief in this appeal.

support for the factual findings. Devers-Scott, 2007 VT 4, ¶ 6 (quoting Braun v. Bd. Of Dental Exam'rs, 167 Vt. 110, 114 (1997)).

The Court then reviews the DRB's legal conclusions without deference, unless such conclusions are within the DRB's area of expertise. Stowe Highlands, 2009 VT 76, ¶ 7.

Our review is additionally limited to those issues raised by the Appellant's Statement of Questions. See V.R.E.C.P. 5(f). With these legal standards in mind, we conduct our review of the DRB's decision within the context of the legal issues preserved for our review by Montchilly's Statement of Questions.

## Background

VTRE owns the parcel located at 4527 Mountain Road in Stowe, Vermont ("the Property"). The Property is approximately 4.2 acres and is in the Upper Mountain Road ("UMR") Zoning District. In the past, a lodging facility was housed on the Property. On November 22, 2016, the DRB approved an application for the conversion of the lodging facility into seven multi-family dwellings. The building is oriented perpendicular to Mountain Road.

On December 6, 2017, VTRE summited an application for approval to demolish and replace the rear portion of the existing building and construct a garage. In connection to this application, VTRE submitted a site plan prepared by Grenier Engineering, floor plans and elevations prepared by G4 Design Studio, an email from Nick Lizotte, a representative of VTRE investments, and an email from Phil Amatulli, an employee of Five-Star Landscaping and Excavating.

The DRB conducted a public hearing on January 16, 2018, which was recessed to February 20, 2018. The hearing was closed at the end of the February public hearing. The DRB issued its decision approving the permit with conditions on February 27, 2018. The DRB imposed the following four conditions:

1. Any change to the plans or the proposed use of the property shall be brought to the Zoning Administrator's attention, prior to its enactment, for a determination if an amendment is required.
2. The site plan shall be modified to show all significant trees and the existing trees lines. A note shall be added to the plan stating that no additional tree cutting is permitted without review and approval by the [DRB]. A zoning permit shall not be issued until the modified site plan is submitted to the Zoning Administrator.

2

3. All trash containers shall be stored in the garage or in a screen structure approved by the Zoning Administrator. The note on the site plan regarding trash containers being stored under the porch awnings shall be removed on the modified site plan.
4. A registered engineer shall certify that the project was built in accordance with the approved site plan before a Certificate of Occupancy is approved.

In re VTRE Inv. LLC, Findings of Fact & Conclusions of Law, at 4 (Town of Stowe Dev. Review Bd. Feb. 27, 2018) (hereinafter "Decision").

Montchilly owns the abutting property, known as Northern Lights Lodge. It filed a timely appeal of the Decision to this Court on March 19, 2018.

## Discussion

Montchilly raises eight Questions in its Revised Statement of Questions. The Questions ask the Court to determine whether the DRB erred in determining that no front yard landscaping was required (Question 1), that no side yard landscaping was required (Question 2), that storing garbage in the garage meets the screening requirements for garbage collection areas (Question 3), that no screening was required for an outdoor garbage collection area (Question 4), that no stormwater plan was required (Question 5), that no additional stormwater management was required (Question 6), that the taller replacement structure will not adversely affect the character of the area (Question 7), and that VTRE's alleged unpermitted regrading of the Property and directing water to Montchilly's property was not subject to review (Question 8).

Because much of Montchilly's brief focuses on the impact of alleged previous unpermitted activities resulting in the regrading of the front of the Property, we address this issue, and related issues, first, then turn to the remaining issues in turn.

### I. Whether previous unpermitted work is subject to review in the present appeal.

Montchilly raises many concerns based in the alleged unpermitted regrading of the front area of the Property. Montchilly asserts that the DRB should have reviewed this alleged unpermitted work in the present action. Montchilly raises this issue as a general matter in Question 8, and as it relates to stormwater issues in Questions 5 and 6.

"The substantive scope of [an] appeal is no broader than the scope of the application before the" panel below. Appeal of Yates, No. 158-9-04 Vtec, slip op. at 6 (Vt. Envtl. Ct. Apr. 17,

3

2007) (Durkin, J.) (citing In re Torres, 154 Vt. 233, 235 (1990)); see also In re Kibbe Zoning Permit, No. 173-8-07 Vtec, slip op. at 7 (Vt. Envtl. Ct. Feb. 13, 2008) (Wright, J.).[2]

In Yates, an applicant applied for an amendment to a pre-existing approval. Yates, No. 158-9-04 Vtec at 6 (Apr. 17, 2007). The scope of that application was limited to whether or not the applicant could construct a single-family residence instead of a previously permitted duplex. Id. The Court noted that:

> Our review in this appeal is therefore limited to the conformance of the proposed single family residence with the applicable Bylaw provisions, as well the impacts, if any, that the conversion of the originally permitted duplex to a single family residence may have on the surrounding area. . . . To the extent that Appellant is correct that Appellees did not obtain an amendment to authorize the prior conversion of the five-unit buildings to duplexes, the proper remedial action would be a municipal or private enforcement action under 24 §§ 4451 and 4470(b). It is not, however, a proper issue in this appeal.

Id. at 6-7 (citation omitted).

While Yates is not directly analogous to the present appeal, we can extrapolate helpful guidance. Here, VTRE applied to demolish and replace the rear portion of an existing permitted building and construct a garage. Our review is therefore limited to the conformance of this application to the relevant conditional use sections of the Town of Stowe Zoning Regulations ("Regulations"). The parties have not directed the Court to, nor can the Court find, a provision in the Regulations requiring the DRB to consider such alleged unpermitted activity in the context of conditional use review. Therefore, the alleged unpermitted regrading activity is unrelated to the application now before the Court. Remedying those activities would be appropriate in an enforcement action, but not an appeal of a municipal permit. We can therefore answer Montchilly's Question 8 in the negative, the DRB did not err in determining that unpermitted regrading was not subject to review in relation to this application.

We next turn our focus to how this conclusion impacts the stormwater issues raised by Montchilly.

When submitting an application for conditional use review under the Regulations, "[t]he applicant shall, at the request of the DRB, submit a plan for the management of stormwater

---

[2] While these relevant cases were in the context of a de novo proceeding, we find they provide helpful guidance on this legal issue.

generated by the proposed development. All stormwater management plans shall meet the applicable" state regulations. Regulations § 3.7(2)(B)(8). Development that creates more than .5 acre of additional impervious surface area requires a stormwater management plan. Regulations § 3.12(2)(F).

Further, "[a]ll development must provide for an adequate stormwater drainage system to ensure that existing drainage patterns are not altered in a manner to cause an undue adverse impact on neighboring properties, town highways or surface waters." Regulations § 3.12(2)(E).

Montchilly asserts that a stormwater plan or additional stormwater management is required for the project. This is in large part due to the alleged unpermitted grading work on the Property. It asserts that stormwater is being directed towards its property. Citing no regulatory provision, it asserts that the DRB has the authority to review this unpermitted work in connection with this application, and by doing so, the project will create more than .5 acres of disturbed land, requiring a stormwater management plan. Further, it appears to assert that the DRB has the authority to remedy alleged unpermitted work in this action.

VTRE asserts that the alleged regrading is unrelated to the present application. Instead, the issues Montchilly raises are effectively enforcement matters. As such, it asserts that the DRB did not err in declining to review the work as it relates to stormwater management or requiring stormwater management.

Montchilly has not directed us to any regulatory authority requiring the DRB to consider these allegations of past activities with respect to stormwater management. In fact, the only regulatory provision that addresses stormwater management does not contain a reference to soil disturbances that pre-date the construction project under review. See Regulations § 3.12(2). This provision provides a list of construction related activities and what stormwater management action must be incorporated into those activities. The listed construction-related activities associated with new construction does not include the complained of regrading or allegedly disturbed area.

Section 3.12 directs that certain stormwater management action be incorporated into new construction but does not require the submission of a plan. We further note that § 3.12(2)(F) triggers further stormwater management action be taken when a "development . . . creates more

5

than ½ (one-half) acre of additional <u>impervious</u> surface . . .." <u>Id</u>. (emphasis added). It is uncontested that the application proposes less than .5 acre of impervious surface. Even reaching back into Montchilly's allegations concerning VTRE's prior leveling activities, the only assertion is that soil was disturbed and leveled, not that more impervious surfaces were created.

Having cited to no requirement that the DRB must take into consideration alleged previously occurring unpermitted work on a property, or to somehow combine previous activities on a property, even unpermitted ones, to surpass the .5 acre threshold set forth in § 3.12(2)(F), we answer Questions 5 and 6 in the negative and conclude that the DRB did not err in determining no stormwater plan or management was required to be submitted and approved.

## II.     Whether front yard landscaping is required at the Property.

When reviewing a proposed project, the Regulations direct that "[a] continuous strip not less than twenty (20') feet deep, measured from the edge of the highway right-of-way, shall be maintained between the street line and the balance of the lot, which strip shall be suitably landscaped." Regulations § 3.7(2)(C)(2)(a). The section provides that only driveways and pedestrian walkways may be located within the strip. <u>Id</u>.

The DRB has discretion to waive this requirement, however, "when it is found that mitigation though [sic] design, screening, or other mitigation will accomplish the objectives outlined for the designated districts." Regulations § 3.7(2)(C).

Montchilly asserts that, as no landscaping is provided on VTRE's plan, the application fails to comply with the Regulations. It additionally argues that the previous permit approving the conversion of the Property for residential use failed to require front yard landscaping, and therefore this is a nonconformity that should be rectified in the pending action.

VTRE disagrees. It asserts it is within the DRB's discretion to waive the front yard landscaping requirement. It asserts that the 2016 application did not require landscaping in the front yard based on the Property's existing vegetation and both the design and orientation of the building itself. VTRE asserts that the changes proposed do not disturb the DRB's 2016 determination that no front yard landscaping is required.[3]

---

[3] We note that both parties address the potential impact discussions between VTRE and the Town have on the pending application. These discussions concern flooding issues in the front of the Property and a coordinated

The present application is for a demolition and enlargement of the back portion of the Property. The building's footprint and orientation will remain the same. The building's height in the back section will be increased by four to seven feet.[4] There is no present proposal to alter the front of the building, including the present landscaping design, which was memorialized as a condition to the permit. Decision at 4, ¶ 2. The present 50-foot setback will not be altered.

We also note that the proposed project, as approved by the DRB, will have little visibility from the front of the Property. As such, we conclude that the visual impact of the Property as altered by the proposal is mitigated by both the design of the building itself and the scope of the proposal and see no reason to disturb the DRB's 2016 decision. Because of this, we conclude that the DRB was within the broad scope of its discretion that the § 3.7(2)(C)(2)(A) Front Yard Treatment standards may be waived. Therefore, we answer Question 1 in the negative.

**III.    Whether side yard landscaping is required at the Property.**

Pursuant to § 4.6(3)(A):

A. Landscaping shall be designed to achieve the purposes of this section, strengthen the features and conditions unique to each site, and should include a combination of shade trees . . ., shrubs, well kept grasses and ground covers. Landscaping may be required in front and side yards, adjacent to parking areas, and where read yards abut residential properties or public roads.[5]

The stated purpose of §4.6 is to:

. . . [E]nsure that landscaping is designed to enhance the overall appearance of the individual properties; integrate new development into its natural and historic surroundings; preserve and enhance the particular identity of individual sites; and to maintain compatibility among neighboring properties and consistency within the community.

Regulations § 4.6(1).

Montchilly argues that the proposed structure will be taller, and the buildings appearance will change. Because of this, it asserts that the building will be visible to neighbors where it was

---

effort between VTRE and the Town, or lack thereof, to remedy some of these issues. However, at the close of the public hearing, there was no plan in place. Therefore, these discussions have no bearing on our present review.

[4] Montchilly asserts that the building will be raised by 8 feet. Montchilly and other neighboring property owners stated at the public hearings that the height would increase 8 feet but point to no VTRE materials to support this assertion. VTRE's application proposes to raise the building's height four to seven feet. The DRB included this in their Decision. Decision at ¶ 11. We have been provided with no reason to disturb this conclusion.

[5] Section 4.6 is applicable to conditional use review pursuant to Regulations § 3.7(2)(B)(7).

not previously visible.  Therefore, it argues the DRB erred in failing to exercise its discretion in requiring side yard landscaping.

VTRE asserts that the current landscaping of the Property where it borders Montchilly is such that the proposed project will largely not be visible from Montchilly's property.  At the public hearing, VTRE stated that the application did not propose to remove any existing trees.  The DRB then memorialized this in a condition requiring that all existing significant trees be labeled on the site plan and not be removed as a part of the construction related to this permit.  Decision at 4, ¶ 2.[6]

The building as it currently stands is not visible from adjacent properties.  This is due to the building's height and the current landscaping of the Property's boundary with Montchilly's property.  The application on appeal proposes an increase in height of four to seven feet and no changes to the landscaping of the Property along this boundary.  Further, VTRE assented to a condition of approval requiring a site plan showing all significant trees be submitted and no tree cutting will be permitted without Town approval.  The DRB concluded based upon the evidence presented that the proposed landscaping plan, as reinforced by the condition that any change to any aspect of the current side yard landscaping must receive Town approval, complied with the § 4.6(3) landscaping standards.

We conclude that the DRB's decision concerning landscaping is supported by sufficient evidence in the record and was within the DRB's discretion; it complies with the purposes of § 4.6

---

[6] VTRE correctly points out that much of Montchilly's brief addresses the issue of screening, not landscaping. Regulations § 4.6(5) address the issue of screening, noting that:

Sufficient screening shall be provided if the DRB determines that topographical or other barriers do not provide adequate screening.  Screening may be required in the following cases:
1. Where more intensive land uses are proposed to abut less intensive uses.
2. Adjacent to garage collection and utility areas, satellite antennas, commercial ventilation systems over 2 square feet, outdoor storage and loading and unloading areas and other outdoor utilities and facilities.
3. When the project adversely impacts adjacent properties (i.e. lighting, outdoor storage, etc.) and when contiguous land uses and activities will adversely impact on the development (i.e. roads or incompatible uses).

While we address the issue of garbage collection below, there has been no allegation here that the proposed project adversely impacts the neighboring properties in a manner contemplated under the section.  Here, the sole allegation is that the building is now slightly visible where it previously was invisible due to landscaping presently in place and not proposed to be removed.  This is due to the four to seven-foot proposed height increase. To the extent Montchilly asserts that screening is required, we conclude that this is not an adverse impact to adjacent properties that would justify additional screening pursuant to § 4.6(5).

and will maintain compatibility with the neighboring properties. We decline to adopt Montchilly's interpretation of § 4.6 and require that a presently not-visible existing building remain invisible through landscaping means. Therefore, we answer Question 2 in the negative.

### IV. Whether the storage of the garbage bins within the Property's garage complies with the Regulations and whether an exterior screened collection area is required.

Section 4.6(5) of the Regulations provide that "[s]ufficient screening shall be provided if the DRB determines that topographical or other barriers do not provide adequate screening. Screening may be required . . . [a]djacent to garage collection . . . areas."

During the public hearings, VTRE stated that garbage cans will be stored in the garage, altering its original proposal to place garbage cans under the building's eves. This became the basis of a condition of the DRB's permit approval. Decision at 4, ¶ 3 ("All trash containers shall be stored in the garage or in a screened in structure approved by the Zoning Administrator.").

Montchilly asserts that, at present, garbage cans have been left out on the Property resulting in trash being scattered by the elements and animals. It asserts that the condition requiring garbage cans to remain in the garage, then ostensibly placed outside for collection, fails to comply with § 4.6(5)(A) because it fails to address this issue.

VTRE argues that the condition imposed is sufficient to comply with § 4.6(5)(A). It asserts that Montchilly's concerns amount to enforcement issues regarding whether VTRE is complying with the permit terms and applicable zoning regulations and therefore is not a proper subject for discussion in this appeal. Moreover, VTRE asserts that Montchilly's concerns are not in line with the purpose of the screening requirements, which is to provide visual barrier, not a barrier against animals or the elements, citing Regulations § 4.6(5)(B). We conclude that the DRB did not abuse its discretion in the conclusion it reached on this point.

The screening provided for in § 4.6(5) is visual. It is not protective in other ways, as suggested by Montchilly. Here, the DRB concluded that the method of housing garbage cans VTRE originally proposed was insufficient. Instead, it concluded, and the parties agreed, that a condition requiring garbage cans be stored in the garage or other screened structure approved by the Zoning Administrator was warranted.

Montchilly has directed us to no provision within the Regulations requiring the DRB to consider the concerns it presents regarding the elements and animals. Indeed, such an absence appears consistent with the purpose of this provision: to provide a *visual* screen.

For these reasons, we conclude that the DRB did not err in determining that storing garbage bins in the garage or in another Town-approved screened structure complies with the Regulations and therefore answer Question 4 in the negative.

**V.      Whether the proposed project is in the character of the area.**

Regulations § 3.7(2)(A) states that a project "shall not result in an undue adverse effect on . . . [t]he character of the area affected as defined by the purpose of the zoning district within with the project is located and specifically stated policies and standard of the Stowe Town Plan."

The Property is in the UMR district. Therefore, the proposed development must be "designed in a manner compatible with the area's rural character." Regulations § 3.7(2)(C)(2)(e). In doing so, "architectural designs shall reinforce the rural landscape of the district" and "[b]uildings should generally be designed with a pitched roof and be of a mass and scale compatible with neighboring properties and the site." Regulations § 3.7(2)(C)(2)(e)(i)-(ii).

The purpose of the UMR is "to control development along the Upper Mountain Road in a manner that allows for residential, recreation and low-density commercial uses of property while preserving the rural character of the landscape, discouraging strip development and promoting the ongoing viability of existing land uses." Regulations § 5.12(1).[7]

Montchilly asserts that the new building will be significantly taller high-pitched roof, which is not in line with other neighboring properties with low pitched roofs. It contends that the DRB erred in determining that the project meets the character of the UMR rather than the neighboring properties.

VTRE asserts that the Property and project are both in line with the stated purpose of the UMR. Further, it asserts that the distinction between high- and low-pitched roofs is misplaced, as the Regulations do not distinguish between the two.

---

[7] Multi-family dwelling units are conditional uses within the UMR District. Regulations, Table 6.1. The maximum building height is 28 feet in the District. Regulations, Table 6.2.

The Regulations clearly state that the character of the area is defined at the district wide level, not immediate neighborhood. While buildings should be of a comparable mass and scale as neighboring properties, there is no requirement that a project must conform to the neighboring properties in the manner Montchilly proposes.

Here, there has been no allegation that the proposed project is not in conformance with the purpose of the UMR. The proposed project is in conformance with the applicable height limitation and has a pitched roof as contemplated by the Regulations, which sets forth no distinction between high- and low-pitched designs. The proposed changes will not change the building's existing footprint. Further, the proposed use is a permissible conditional use in the UMR.

We conclude that the DRB did not err in determining that a four to seven-foot height increase alone did not result in an undue adverse impact to the character of the area and, therefore, the proposal complied with § 3.7(2)(A). For these reasons, we answer Montchilly's Question 7 in the negative.

<u>**Conclusion**</u>

For the reasons set forth above, we conclude that the record sufficiently supports the DRB's conclusion that the application complies with the Regulations. As such, the DRB did not err in determining that no further front or side yard landscaping is required, that storing garbage in the garage complies with the applicable screening requirements, that no outdoor garbage screening is required, and that the proposed building does not result in an undue adverse impact on the character of the area. We further conclude that the DRB properly determined that previously occurring alleged unpermitted regrading was not subject to review in this application, and properly concluded that no stormwater plan or management was required. As such, we **UPHOLD** the DRB's decision as conditioned.

This concludes the matter before the Court. A Judgment Order accompanies this Decision.

Electronically signed on December 28, 2018 at Brattleboro, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division