VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

Docket No. 20-ENV-00021



| Daly Cond. Use & Design Review Denial |
|---|

## ENTRY REGARDING MOTION

**Title:** Motion to Clarify or Strike Statement of Questions (Motion #2).

**Filer:** David W. Rugh, Attorney for the Town of Stowe; Alexander J. LaRosa.

**Filed Date:** February 5, 2021.

Response in Support of Town's Motion to Clarify or Strike, filed on February 11, 2021 by Interested Parties/Neighbors.

Response in Opposition filed on February 18, 2021 by Appellant Jeffrey Daly, self-represented litigant.

Reply Memorandum of Law and Edited SoQ, filed on March 4, 2021 by David W. Rugh, Attorney for the Town of Stowe.

**The motion is GRANTED.**

By its pending motion, The Town of Stowe ("Town") seeks to strike, revise, or receive clarification of the Questions posed by Jeffrey Daly ("Appellant") in his Statement of Questions, filed on November 17, 2020.

We begin our analysis by reference to an established precedent, cited by the Town, that "[a]ppellants in a municipal land use appeal are obligated to present a short, plain statement of the issues and scope of the appeal" in their statement of questions. In re Irish Const. Application, No. 44-3-08 Vtec, slip op. at 3 (Vt. Envtl. Ct., Sept. 9, 2008) (Durkin, J.) (citations omitted). This general rule from our case law is premised upon certain provisions in our civil procedural rules, which provide that claims for relief in litigation "shall contain . . . a short and plain statement of the claim . . .." V.R.C.P. 8(a); see also Levinsky v. Diamond, 140 Vt. 595, 600 (1982) (noting that an initial pleading need only to provide "fair notice of the claim and the grounds upon which it rests" and "does not require a specific and detailed statement of facts constituting the cause of action").

Appellant's Statement of Questions ("SoQ") are not lengthy, covering only a bit more than one single-spaced page. They do, however, contain additional language beyond a basic presentation of his claims about the Town of Stowe Development Review Board's ("DRB") October 2, 2020, denial of Appellant's application for conditional use and design review approval for a proposed tennis

*Entry Regarding Motion*

*Page 1 of 3*

*Daly Cond. Use & Design Review Appeal, No. 20-ENV-00021 (Apr. 15, 2021) (Durkin, J.).*

camp development. In addition, Appellant's SoQ does not contain reference to the specific provisions of the Town of Stowe Zoning Regulations ("Regulations") that form the basis of his legal challenges. The way in which Appellant phrases his SoQ also does not reference or respect that the Town has adopted provisions for appeals from its land use determinations that may only be appealed to this Court "On-The-Record" ("OTR") and are not reviewed by this Court on a *de novo* basis. *See* VTRE Inv. LLC CU Duplex, No. 62-6-18 Vtec, slip op. at 1–2 (Vt. Super. Ct. Envtl. Div. June 30, 2020) (Durkin, J.) (noting that as the Town of Stowe has elected to make its land use determinations OTR, the Court must follow the procedural requirements established in the Municipal Administrative Procedures Act). We do not conduct our own evidentiary hearing and may only review the record to determine whether it contains sufficient foundation for the DRB's factual findings and legal conclusion. *See* In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 76, 186 Vt. 568 (stating that this Court will affirm factual findings only if they are supported by substantial evidence); Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248 (*quoting* Braun v. Bd. Of Dental Exam'rs, 167 Vt. 110, 114 (1997)) (noting that when evaluating whether the findings are supported substantial evidence this Court considers whether a "reasonable person could accept . . . as adequate" support for the factual findings).

We also note that several of Appellant's Questions, specifically Questions 4, 6, and 10, repeat a challenge to the DRB's determinations concerning the project's conformance with or impact upon the character of the area of the project. *See* Appellant's Statement of Questions filed on Nov. 17, 2020, at 1–2. We therefore direct that Appellant **STRIKE** Questions 6 and 10 as redundant. Appellant will have a full opportunity to address his claims concerning the impacts upon the character of the area when he addresses his Question 4 in his Appellant's Brief.

We appreciate that Appellant is a self-represented litigant and view his SoQ in light of our obligation to assure that he does not suffer an unfair disadvantage in this proceeding. *See* Sandgate Sch. Dist. v. Cate, 2005 VT 88, ¶ 9, 178 Vt. 625 (noting that the court traditionally affords "wider leeway" to pro se litigants); *see also* In re Hawk's Nest South, LLP, No. 84-5-10 Vtec, slip op. at 5–7 (Vt. Super. Ct. Envtl. Div. Nov. 29, 2010) (Durkin, J.) (allowing leniency in analyzing legal issues incorporated in a pro se Appellants' statement of questions).

We appreciate the effort of the Town's attorney to bring clarity to the legal issues Appellant attempts to raise, in a manner that conforms to our procedural requirements, by presenting both a marked and clean version of a revised draft of Appellant's SoQ. We conclude that the Town attorney's proposed revised draft of Appellant's SoQ aligns more closely with Appellant's obligation of how he must present his claims in this OTR appeal.

For these reasons, we **GRANT** the Town's motion in the following manner: Appellant shall replace his SoQ with the revised draft suggested by the Town; a copy of the Town's revised draft is attached to this Entry Order. If Appellant objects to any portion of the revised draft, he must submit his objections, in writing, to the Court within the next five business days. The Court will thereafter review Appellant's objections and determine whether his objections should be incorporated into the Revised SoQ to be filed with the Court. The Court directs the Town's attorney to provide Appellant with an electronic copy of the revised SoQ, in MS Word format, for Appellant to use in signing and submitting an Amended SoQ with the Court.

We note that our ruling here does not prohibit Appellant from incorporating any and all of the language stricken from his original SoQ to be included in the brief he is required to file.

*Entry Regarding Motion*            *Page 2 of 3*

*Daly Cond. Use & Design Review Appeal, No. 20-ENV-00021 (Apr. 15, 2021) (Durkin, J.).*

Pursuant to our Entry Order of April 8, 2021, Appellant shall have 45 days from the date of this Entry Order (i.e.: until 4:00 pm on **Monday, June 7, 2021**) to file his Appellant's Brief.

**So Ordered.**

Electronically signed on April 15, 2021 at Newfane, Vermont, pursuant to V.R.E.F. 7(d).

Thomas S. Durkin, Superior Judge
Environmental Division

*Entry Regarding Motion*

*Page 3 of 3*

*Daly Cond. Use & Design Review Appeal, No. 20-ENV-00021 (Apr. 15, 2021) (Durkin, J.).*

### Appellant's Statement of Questions With Suggested Revisions

1. Did the DRB violate my 14th Amendment right to opportunity to be heard before being deprived of my property rights, when the DRB Chair denied me the ability to present oral testimony at the beginning of the public zoom hearing on the permit and denied me the ability to address, in writing or orally, concerns that neighboring property owners had?

2. Did the DRB violate the rule against ex parte communications (24 V.S.A. 1207), when, during the public hearing by zoom, the DRB Chair received, read, and considered without disclosure or inclusion in the record comments from neighboring property owners in the Zoom meeting chat raising concerns with the proposed project?

3. Did the DRB err in denying the application on the grounds that it contained "technical deficiencies"?

4. Did the DRB err in denying the application on the grounds that the proposed project does not fit the "character of the area," per Zoning Regulations § 3.7(2)(A)(3)?

5. Was the DRB's interpretation of the Zoning Regulations § 3.7(2)(A)(3)'s "character of the area" standard for conditional uses arbitrary and capricious?

6. ~~Did the DRB err in finding that the proposed project did not fit within the character of the RR5 zoning district per Zoning Regulations § 3.7(2)(A)(3)?~~ *(stricken)*

6/7. Did the DRB error (sic) in concluding that the application did not satisfy applicable dimensional standards in the Zoning Regulations Table 6.2?

7/8. Did the DRB err in concluding that the application failed to demonstrate no undue adverse impact on the capacity of existing or planned community facilities per Zoning Regulations § 3.7(2)(A)(1)?

8/9. Did the DRB err in concluding that the application failed to demonstrate no undue adverse impact on Traffic on roads and highways in the vicinity per Zoning Regulations § 3.7(2)(A)(2)?

1

~~stricken~~

~~10. Did the DRB err in concluding that the application failed to demonstrate no undue adverse impact on the character of the area affected per Zoning Regulations § 3.7(2)(A)(3)?~~

9. ~~11.~~ Did the DRB err in concluding that the application failed to demonstrate that the project will create no undue water, air and noise pollution per Zoning Regulations § 3.7(2)(B)(2)?

10. ~~12.~~ Did the DRB err in concluding that the application failed to demonstrate that adequate access management would be provided per Zoning Regulations § 3.7(2)(B)(3)?

11. ~~13.~~ Did the DRB err in concluding that the application failed to demonstrate compliance with the standards in Zoning Regulations § 3.7(2)(B)(5) regarding circulation and parking?

12. ~~14.~~ Did the DRB err in concluding that the application failed to demonstrate compliance with the standards in Zoning Regulations § 3.7(2)(B)(6) regarding pedestrian circulation and access?

13. ~~15.~~ Did the DRB err in concluding that the application failed to demonstrate compliance with the standards in Zoning Regulations § 3.7(2)(B)(7) regarding landscaping or screening?

14. ~~16.~~ Did the DRB err in concluding that the application failed to demonstrate compliance with the standards in Zoning Regulations § 3.7(2)(B)(8) regarding stormwater management?