VERMONT SUPERIOR COURT

Environmental Division

32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org

ENVIRONMENTAL DIVISION
Docket No. 21-ENV-00013



| | |
|---|---|
| **Castine Mountain Road, LLC Conditional Use Permit Appeal (After Remand)** | **ON-THE-RECORD DECISION ON THE MERITS** |

This is the second occasion we have had to review this proposed dwelling unit and attached garage in the Town of Stowe. Appellant Michael Seaberg ("Mr. Seaberg") presently appeals a February 2, 2021, decision of the Town of Stowe Development Review Board ("DRB"), approving with conditions a conditional use permit application submitted by Castine Mountain Road, LLC ("Castine" or "Applicant"). The DRB had previously approved said application in 2019, but, following an appeal by Mr. Seaberg, we remanded the matter to the DRB to make further necessary findings of fact and legal conclusions, which it has now done.

This is an on-the-record appeal. Mr. Seaberg represents himself in this matter. The Applicant has notified the Court of its intention not to appear in this appeal. The Town of Stowe ("Town") is participating as an interested person and is represented by Joseph S. McLean, Esq., but has not filed a brief.

## Background

Castine owns a parcel approximately 4.2 acres in size, located at 4527 Mountain Road in Stowe, Vermont ("the Property"). The Property is located within the Upper Mountain Road Zoning District ("the UMR District") and was previously owned by VTRE Investments, LLC ("VTRE"). It is the site for an existing six-unit multi-family dwelling.[1] Prior owner VTRE also

---

[1] The existing 6-unit dwelling is shown as buildings #1 and #2 on the site plan and the build out plan. Those two buildings were approved for seven units but have been constructed as six; at times during his testimony, Mr. Lizotte spoke as though he viewed the construction of this new building at the front of the motel as taking over the seventh approved unit. *See* Minutes of May 21, 2019, meeting at 4-5. We do not need to address this issue, as the

proposed and received municipal approval for a duplex on the Property,[2] which was the subject of a separate appeal before this Court (Docket No. 62-6-18 Vtec) that resulted in a remand to the DRB. The present appeal relates to Castine's April 9, 2019, application seeking approval to construct a single dwelling unit, garage, and associated paved turnaround area/driveway ("the Project").[3] The dwelling unit is proposed to be attached to the front end of the existing six-unit dwelling on the Property.

Multi-family residential use is permitted as a conditional use in the UMR District, and so it was determined that the Project, as an addition to an existing multifamily residence, must receive conditional use approval. In connection with its application, Castine submitted site plans, a landscaping plan, and a build out plan, each prepared by McCain Consulting, Inc.,[4] as well as floor plans and elevations prepared by Justin Bourne. The record also contains lighting information, email correspondence, and written comments.

The DRB conducted a public hearing on May 21, 2019, which it continued to July 2, 2019. Mr. Nicholas Lizotte testified on behalf of Castine at each proceeding. The DRB reviewed the Project for compliance with the Town of Stowe Zoning Regulations as adopted October 9, 2018, and effective October 30, 2018 ("Regulations"). On July 16, 2019, the DRB issued its Findings of Fact, and Conclusions of Law and Decision approving the application subject to conditions.

Mr. Seaberg is an occupant of the abutting property at 4441 Mountain Road, Stowe, Vermont. He submitted written comments to the DRB ahead of both proceedings and participated in the May 21 hearing. Mr. Seaberg filed a timely appeal from the DRB's decision with this Court on August 12, 2019 (Docket No. 98-9-19 Vtec). In our merits decision, we

---

construction and other development associated with the new building required conditional use approval regardless; further, our review is limited by the application and the Questions presented in the Appellant's Statement of Questions.

[2] The proposed duplex is shown as building #3 on the site plan and the build out plan.

[3] The proposed three-bedroom unit and garage is shown as building #4 on the site plan and the build out plan.

[4] The Applicant submitted two copies of the site plan to the DRB. He submitted one copy dated January 25, 2019, ahead of the May 21 meeting (denoted as Exhibit 2 in the index to the record below). Apparently in response to feedback at that meeting that the site plan lacked required information and that it was difficult to determine from the site plan what were existing versus planned improvements, he submitted a revised copy dated June 21, 2019, along with a "build out plan" dated same, ahead of the continued July 2 proceedings. The revised site plan and build out plan are denoted as Exhibits 13 and 14 respectively in the index to the record. Unless otherwise noted, we exclusively refer in this Decision to Exhibit 13, the June 21, 2019, site plan.

concluded that the DRB did not make findings of fact or draw conclusions of law related to erosion control and stormwater management, but rather attempted to impose as a condition that the Project must comply with the relevant sections of the bylaws. We vacated that condition and remanded the application to the DRB to make findings of fact and conclusions of law on those issues. Castine Mountain Road, LLC CU, No. 95-8-19 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. July 16, 2020) (Durkin, J.) (Hereinafter "Castine I"). We further cautioned that the DRB had not separated its findings of fact from its conclusions of law regarding landscaping, and that each lacked the necessary specificity. We directed the DRB to make more detailed findings of fact and conclusions of law on front and side-yard landscaping. Id. at 7–8. Finally, noting that the Applicant had not included a time schedule for completion of buildings, parking spaces, and landscaping with its application, we instructed the DRB to determine whether the application was complete without such a schedule. Id. at 9.

The DRB chose not to conduct further hearings upon remand, as is its prerogative. Instead, its decision issued February 2, 2021, indicates that it "reviewed the complete hearing record" in order to make the necessary additional findings of fact and conclusions of law. In re 4527 Mountain Road, Project No. 5999 (Remand), Findings of Fact, Conclusions of Law, & Decision at 2 (Town of Stowe Dev. Review Bd. Feb. 2, 2021) (Hereinafter "Remand Decision"). Mr. Seaberg challenges the DRB's Remand Decision on each of the issues mentioned above: erosion control and stormwater management; front and side-yard landscaping; and the time schedule for completion. He further challenges the adequacy of the DRB's finding that the Project will not create an undue adverse impact through water pollution.

## Standard of Review

In an on-the-record appeal from a decision by a municipal panel, our role as the reviewing tribunal is similar to that of the Vermont Supreme Court when it hears appeals from administrative bodies. That is, we consider only the decision below, the record made before the municipal panel, and the briefs submitted by the parties. In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). We do not take new evidence or complete our own determination of the facts. Instead, we review the municipal

panel's factual findings to determine whether the decision below "explicitly and concisely restate[s] the underlying facts that support the decision." *See* 24 V.S.A. § 1209(a)—(b).

We will uphold the municipal panel's findings of fact if substantial evidence in the record supports them. In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 7, 186 Vt. 568. In examining whether there is substantial evidence in the record, we are not permitted to make our own assessment of the credibility of a witness's testimony or reweigh conflicting evidence in the record. *See* In re Appeal of Leikert, No. 2004-213, 2004 WL 5582097 (Vt. Nov. 2004 term) (unpublished mem.); Devers-Scott v. Office of Professional Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248. We are simply to inquire whether the record includes relevant evidence that a "reasonable person could accept . . . as adequate" support for the findings rendered. Devers-Scott, 2007 VT 4, ¶ 6 (quoting Braun v. Bd. of Dental Exam'rs, 167 Vt. 110, 114 (1997)). Lastly, we review the municipal panel's legal conclusions without deference unless such conclusions are within their area of expertise. Stowe Highlands, 2009 VT 76, ¶ 7. We apply this standard while addressing each of the issues raised by Mr. Seaberg in his Statement of Questions.

## Discussion

### I. Erosion and stormwater issues

Mr. Seaberg's Questions 5 and 6 ask whether the DRB erred by failing to require a sediment control plan or by concluding that the Project's stormwater drainage system was adequate. As these issues formed the primary basis for our previous decision to remand the matter back to the DRB, we review the DRB's decision on these issues first. Pursuant to Regulations § 3.12.2, "[c]onstruction-related activities associated with any new construction" must adhere to a set of stormwater management standards. The first of these is that development "involving the disturbance of more than one-half acre shall submit an erosion and sediment control plan . . . before a zoning permit is issued." Regulations § 3.12.2(C).

Regrettably, the DRB has still not separated its findings of fact from conclusions of law, as previously directed by this Court, which makes our task significantly more difficult. Rather, under each conditional use standard that it analyzed, the DRB has listed a number of alphabetized bullet points consisting of a mix of the relevant provisions of the bylaws and the evidence it received. Then, in a single paragraph labeled "conclusion," it has listed the conclusions it drew, without

distinguishing between findings of fact and conclusions of law.  Nevertheless, given the existing length of these appeals, we will do our best to determine whether the DRB made the necessary factual findings to support each of its necessary legal conclusions and conditions under appeal. *See* In re Ferrera & Fenn, No. 159-9-10 Vtec, 2012 WL 6215635 (Vt. Super. Ct. Envtl. Div. Nov. 13, 2012) ("Although it would have been helpful and advisable for the DRB to label individual paragraphs as findings of fact or conclusions of law, we cannot say that the DRB's failure to do so is fatal to its decision.  The DRB's use of terms such as 'conclude,' 'find,' and 'based on' sufficiently distinguish the findings of fact from the conclusions of law.")

The DRB did not make the necessary conclusion of law as to whether the Regulations require an erosion and sediment control plan for this Project.  The DRB did make the factual finding that the construction associated with this Project would not disturb half an acre or more of soil.  Remand Decision at 13.  As evidence, it cited the development application where Applicant checked "no" next to this question, as well as the Applicant's testimony.  Id; *see* Exhibit 1, "Town of Stowe Development Application" at 2 (April 9, 2019); *see also* Dev. Review Bd. Minutes (July 2, 2019) at 37.  We conclude that this is sufficient evidence to support the DRB's finding of fact.  We rely on that finding to make the necessary legal conclusion that no erosion and sediment control plan is required for this Project.  We therefore answer Mr. Seaberg's Question 5 in the negative.

The DRB also needed to determine whether the Project created more than half an acre of new impervious surfaces, in which case a stormwater management plan prepared by a qualified engineer would be required.  Regulations § 3.12.2(F).  Regardless of the amount of new impervious surface created, the DRB needed to conclude that the Project "provide[s] for an adequate stormwater drainage system to ensure that existing drainage patterns are not altered in a manner to cause an undue adverse impact on neighboring properties, town highways or surface waters" to approve it.  § 3.12.2(E).

As to the first point, the DRB concluded that no stormwater management plan was required.  Remand Decision at 13.  To reach this conclusion, it found that the Project created less than half an acre of impervious surface, and as evidence cited the application, Applicant's testimony, and the calculations provided on the Applicant's site plan.  Id; *see* Exhibit 1 –

"Development Application" at 2; Exhibit 13 – "Site Layout Plan: Castine Mountain Road LLC", sheet C-1 (June 21, 2019) (hereinafter "Site Plan"). We conclude that the evidence was sufficient to support this factual finding and that the legal conclusion is well-supported. We therefore **AFFIRM** the DRB's factual and legal determinations.

We are more troubled by the DRB's sometimes cursory treatment of the second issue. The DRB described testimony and other evidence presented by the Applicant which established that there are significant existing stormwater management and erosion issues in the area surrounding and including the Applicant's property. As summarized by the DRB, significant quantities of stormwater flow off of Lower Sanborn Road, which is perpendicular to and across Mountain Road from the Property. Much of this stormwater flows through two culverts beneath Mountain Road and into a ditch on the frontage of Applicant's property, where it continues to travel downhill past and/or onto Mr. Seaberg's property. This stormwater carries a significant quantity of sand and gravel, which periodically requires the State to clean the two culverts. Remand Decision at 12–13.

Specific to this Project, the DRB identified that the Applicant proposed to relocate an existing ditch on its property that drains into the ditch on the Mountain Road frontage to accommodate the new building. The DRB also noted the written testimony from Mr. Seaberg and Ms. Hillpot that "raised concerns regarding additional Stormwater discharging into the existing trench that runs parallel to Mountain Road and continues on to their property; they speculated that the additional run-off will 'overwhelm the existing culverts at 4441 Mountain Road and have an adverse effect on this property.'" Remand Decision at 13. The DRB determined, however, that "[e]xcept for relocating the existing ditch on the western side of the proposed building, the Applicant is not proposing any changes to the existing drainage pattern," and that any runoff from Applicant's property was just one contributor to water in the frontage ditch. Id. It ultimately concluded, "Given that the site is previously developed, is generally flat, and the Applicant is not proposing more than a 1/2 acre of new impervious surfaces or grading/disturbance…the Project will not have an undue adverse impact on neighboring properties, town highways or surface waters." Id.

It is not our role to re-weigh conflicting testimony. Rather, we must simply determine whether the DRB could reasonably reach the factual findings it did based on the evidence before it and whether those factual findings support the legal conclusions drawn. The DRB found that the only physical changes proposed in this particular application were the addition of 0.19 acres of impervious surfaces in the form of the house, garage, and paved turnaround area, the relocation of the drainage ditch around the side of the new building, and the addition of a small landscaping mound in front of the building. All of this is well supported by the evidence. *See* Site Plan at sheet C-1; *see also* Exhibit 3 – "Landscaping Plan- VTRE Investments LLC Addition of Building #4," Sheet L-1 (Jan. 25, 2019) (Hereinafter "Landscaping Plan"); Dev. Review Bd. Minutes (July 2, 2019) at 36–37. From these facts, the DRB drew the legal conclusion that the Project would not create an undue adverse impact via stormwater on neighboring properties, town highways or surface waters.

We conclude that the facts found by the DRB support this conclusion. The Applicant is not responsible for pre-existing issues with stormwater drainage that begin off its property and continue onto and through the frontage thereof. The DRB could reasonably conclude based on the record it developed that the activities proposed as part of this Project would have a negligible impact, if any, on these pre-existing stormwater drainage issues. We therefore **AFFIRM** the DRB's conclusion that the Project before it will not create any undue adverse stormwater impacts on neighboring properties, town highways, or surface waters. Nevertheless, we note our concern that the Town's current arrangements for the maintenance of Sanborn Road and the watershed it encompasses appear to be leading to erosion and stormwater impacts on downhill properties.

II. Front yard landscaping

Mr. Seaberg's Question 1 asks whether the DRB erred by determining that Applicant's proposed front yard landscaping is adequate. The relevant conditional use standards on front yards for this district require that "[a] continuous strip not less than twenty (20') feet deep, measured from the edge of the highway right-of-way, shall be maintained between the street line and the balance of the lot, which strip shall be suitably landscaped," and that the front yard not be used for outdoor storage or parking. Regulations § 3.7.2(C)(2)(a). The DRB has discretion to waive this requirement "when mitigation [through] design, screening or other mitigation will

-7-

accomplish the objectives outlined for the designated districts." Regulations § 3.7.2(C); *see* also id. § 3.7.2(C)(2) (listing objectives for the UMR District, including the preservation of "a well landscaped highway corridor"). Elsewhere, the regulations further direct that "[i]n instances where a planting strip is required along road frontage, at least one street tree shall be planted for each thirty linear feet of landscaping strip." Regulations § 4.6.3(D).

In its 2019 decision, the DRB did not adequately address whether this 20' deep strip was present and appropriately planted and if not, whether the DRB was justifiably waiving the requirement. Castine I, No. 95-8-19 Vtec at 7 (July 16, 2020). Mr. Seaberg claims that the Remand Decision suffers from these same infirmities.

Based on the submitted landscaping plan and Mr. Lizotte's testimony, the DRB made the following findings of fact: "The area from the edge of the right-of-way to a depth of approximately 45' feet contains an open existing grassy area, the proposed 4' landscaped mound, and two (2) proposed blue spruce trees. The blue spruce trees are proposed to be 8' -10' when planted. No buildings or structures are located within this area. A small portion of the turn-around area and portions of the existing driveway are within this area." Remand Decision at 14. The DRB also found, based on Mr. Lizotte's testimony, that existing soil & drainage conditions have led to the death of trees along the front of the property and therefore restrict the Applicant's ability to landscape in front yard. Id. at 11; *See* Dev. Review Bd. Minutes (July 2, 2019) at 24, 27. Based on these facts, the DRB concluded that "Given the existing soil and drainage conditions…the proposed landscaping mound and trees, together with the design and placement of the proposed building, provide sufficient landscaping and screening to better integrate the proposed building into its natural surroundings and be compatible with neighboring properties." Remand Decision at 11.

This passage is not a model of clarity and could generate confusion as to whether the DRB has concluded that the landscaping is adequate or has waived that requirement in favor of alternative mitigation. Indeed, during the July 2, 2019, meeting, board members expressed some confusion themselves about whether they were waiving the front yard landscaping requirements, with the Board Chair indicating they had "pass[ed]" on them. *See* Dev. Review Bd. Minutes (July 2, 2019) at 44; Id. at 40–42. However, it is the DRB's written decision that is final,

which in this instance is the Remand Decision.  *See* 24 V.S.A. § 1209(a) (requiring municipal panels conducting on-the-record hearings to issue final decisions in writing); Nash v. Warren Zoning Bd. of Adjustment, 153 Vt. 108, 113 (1989) (finding that a voice vote taken at the close of a hearing by a municipal panel approving a permit application was not a final decision, while a subsequent written decision denying the application was).

We conclude based on a review of the decision in its entirety that the DRB determined that the front yard landscaping requirements were met, with the possible exception of the requirement that one tree be planted every thirty feet.  The DRB found that there is a strip of more than 20' depth between the building and the road in which no storage or parking is located.[5] It called that landscaping "sufficient" and in a separate section on page 15 it concluded that the "4' landscape mound with evergreen trees…provide suitable landscaping."   Together this suggests a suitably landscaped strip, as required by Regulations § 3.7.2(C)(2)(a), where suitability is determined in part by the soil conditions and drainage and their ability to support vegetation. If the DRB did waive the "one tree per thirty feet" requirement, it did so because of evidence it deemed credible that the rest of the front yard area would not sustain tree plantings, given the extensive stormwater infiltration from Sanborn Road.  We **AFFIRM** these legal conclusions in the Remand Decision, and we determine that the factual findings underlying them are based on evidence that a reasonable person would deem sufficient.

### III.  Side yard landscaping

Mr. Seaberg's Question 2 asks whether the DRB erred by determining that the side yard landscaping next to the proposed building is also adequate.  In our previous decision, we stated that the DRB must "include some findings or reasoning to support the DRB's conclusion that 'the proposed landscaping . . . meets the standards outlined in Section [4.6].'" Castine I, No. 95-8-19 Vtec at 7 (July 16, 2020).

Those standards direct that "[l]andscaping shall be designed to achieve the purposes of this section, strengthen the features and conditions unique to each site, and should include a combination of shade trees (deciduous and/or coniferous), deciduous and evergreen shrubs, well

---

[5] Mr. Lizotte testified that the turn-around area, which, in any case, appears to be within 45' but not 20' from the road, will not be used for parking.  Remand Decision at 14; *see* Site Plan, sheet C-1.

kept grasses and ground covers." Regulations § 4.6.3(A). The stated purposes of the section include "enhance[ing] the overall appearance of individual properties; integrat[ing] new development into its natural and historic surroundings; preserv[ing] and enhanc[ing] the particular identity of individual sites; and maintain[ing] compatibility among neighboring properties and consistency within the community." § 4.6.1. The landscaping requirements also direct that shade trees should help break up the visual bulk of large buildings. § 4.6.3(C).

As the DRB noted, the Applicant submitted a landscaping plan with this application. That plan denotes existing retained landscaping features, landscaping features proposed to be removed or added as part of this Project (those within a bolded "bubble" on the plan), and landscaping features proposed to be removed or added as part of the proposed duplex project. Landscaping Plan, sheet L-1. The only landscaping changes proposed as part of this application were the removal of two white pine trees and the addition of a 4-foot-tall landscaping mound flanked at the front by two new blue spruce trees. All of these changes were proposed between the Project and the road, or in other words, in the front yard of the new building. *See* Remand Decision at 10.

Between the proposed new building and Mr. Seaberg's property is the existing paved driveway, and a grassy area including a number of existing trees. The landscaping plan further identifies three new maple trees to be planted along the most direct lines of sight between the Project and Mr. Seaberg's property. Planting of those maple trees appears to be proposed as part of the duplex project.

The DRB made the following finding of fact that appears to apply generally to landscaping around the Project: "The proposed landscaping is coupled with the existing landscaping and mature bushes/trees that are located on the site." Remand Decision at 11. Further, the DRB imposed as condition number 8 the following requirement: "Landscaping shall be installed and maintained as shown in the provided Project plans prepared by McCain Consulting and amended herein. Any dead and dying plants and trees as shown on said plans shall be replaced within one (1) year of death." Remand Decision at 17. Taken together, we conclude these passages amount to 1) a factual finding that the side yard of the Project will include all the retained existing and proposed trees and shrubs shown on the Landscaping Plan between the Project and Mr.

-10-

Seaberg's property and 2) a condition to ensure that these new trees will be planted regardless of whether the proposed duplex receives approval or is constructed. We also conclude that this factual finding and condition are sufficiently supported by the evidence. *See* Landscaping Plan, sheet L-1; Dev. Review Bd. Minutes (May 21, 2019) at 46–47.

The DRB further drew the legal conclusion that "the proposed landscaping mound and trees, together with the design and placement of the proposed building, provide sufficient landscaping and screening to better integrate the proposed building into its natural surroundings and be compatible with neighboring properties." Remand Decision at 11. This conclusion appears to apply equally to the side as well as front-yard landscaping and is supported by the factual findings referenced above. Together with the associated conditions, it represents the bare minimum necessary for the DRB to determine that the Project comports with the requirements of Section 4.6 as they apply to side-yard landscaping. The Remand Decision on this issue, including Condition 8, is therefore **AFFIRMED**.

## IV. Written time schedule for construction

Mr. Seaberg's Question 3 asks whether the "DRB err[ed] in determining that a time schedule for completion of buildings, parking spaces and landscaping did not need to be submitted prior to approval of the Application?" In our previous decision, we provided the applicable standards from the regulations. We first addressed Mr. Seaberg's Question 3 from that earlier appeal, which he appears to have dropped in this appeal, as to whether a "phasing plan" was required. We concluded that the Regulations provision Mr. Seaberg cited applied only to planned unit developments, and he had not provided any evidence that this Project qualified as such. Castine I, No. 95-8-19 Vtec at 8–9 (July 16, 2020). However, we also remarked that separate from any phasing plan, the Regulations require all conditional use applications to include materials stating the 'time schedule for completion of buildings, parking spaces and landscaping,' unless waived by the DRB. Id.; *see* Regulations § 3.8(8). We requested that the DRB provide a clearer statement of whether the Applicant had met this latter requirement or whether the DRB waived it.

In its Remand Decision, the DRB added a new section on the required components of the conditional use application. In this section, it stated that no written statement had been provided

-11-

of the time schedule. However, it also noted Mr. Lizotte's testimony as to the sequencing in which Castine expected to complete this Project and the other developments on the property for which it had obtained or sought permits. The DRB chose to retain condition 3 initially imposed in its 2019 decision, namely that Mr. Lizotte provide a written statement matching that testimony before he would be issued a permit. From the above, we conclude that the DRB waived the requirement for the statement of a time schedule, instead electing to rely on a memorialization of the more flexible sequencing plan to which Mr. Lizotte testified. Given the significant uncertainty that the appeals concerning each Project at the property have added to any estimates that would appear in a time schedule, and the relatively small nature of this Project, we cannot conclude that the DRB erred in waiving this requirement. The Remand Decision on this issue, including condition 3, is therefore **AFFIRMED**.

## V. Adverse impacts via water pollution

Mr. Seaberg's Question 4 asks whether the DRB "err[ed] in determining that the application would cause no undue water pollution." *See* Regulations § 3.7.2(B)(2) (requiring that the proposed use "will not result in undue water . . . pollution"). In our previous decision, we determined that the DRB's insufficient conclusions on stormwater prevented us from reviewing its conclusion on undue water pollution. Castine I, No. 95-8-19 Vtec at 9 (July 16, 2020). Now that the DRB has provided sufficient detail as to stormwater, we can review their finding on water pollution.

Mr. Seaberg's sole argument about water pollution in his brief is that a proposed drainage swale on the Southern half of Applicant's property (away from the Project) will, he claims, capture stormwater from the Project area and direct that stormwater across the boundary line and to the leachfield area for Mr. Seaberg's septic system. He argues this could damage his septic system, which could lead to pollution of the river that runs behind both properties. Appellant's Brief at 9. He avers that he raised this issue in his written testimony ahead of the final DRB hearing and that the DRB referred to the testimony. However, he claims that the DRB did not properly factor this testimony into its determination that the Project would not cause undue water pollution. Id.

The DRB did state that it found Mr. Seaberg's testimony on this leachfield issue and/or on the stormwater discharged to the drainage ditch running along Mountain Road to be "speculat[ive]." Remand Decision at 13. Again, we are not permitted to make our own assessment of the credibility of witness testimony or reweigh conflicting evidence in the record. *See* In re Appeal of Leikert, No. 2004-213, 2004 WL 5582097 (Vt. Nov. 2004 term) (unpublished mem.); Devers-Scott v. Office of Professional Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248. Rather, we must inquire whether the record includes relevant evidence that a "reasonable person could accept . . . as adequate" support. Devers-Scott, 2007 VT 4, ¶ 6. As detailed earlier, the factual findings that the DRB did make regarding stormwater issues were supported by evidence that a reasonable person would deem sufficient. We therefore will not disturb those findings. Nor do we find reason to disagree with the DRB's legal conclusion based on those findings that no undue water pollution would be caused by the Project in the manner alleged by Mr. Seaberg. The Remand Decision on this issue is therefore **AFFIRMED**.

### Conclusion

For the foregoing reasons, the Court concludes that the DRB's findings of fact are supported by substantial evidence in the record below. Furthermore, we conclude that with one exception, the DRB has made the necessary legal conclusions as to the issues raised by Mr. Seaberg in his appeal, and that those conclusions are supported by its findings of fact. We further conclude, as to Mr. Seaberg's Question 5, that no erosion and sediment control plan is required for construction associated with this project, based on the DRB's well-supported findings of fact. We determine further that the DRB's conditions are supported by the evidence and note our understanding that Condition 8 requires applicant to complete all of the landscaping improvements shown on the Landscaping Plan regardless of whether the Duplex project receives approval or is constructed. We therefore **AFFIRM** the DRB's approval of Applicant's conditional use application for this project.

A Judgment Order accompanies this Decision.

This completes the current proceedings before this Court concerning this appeal.

Electronically signed on January 7, 2022, at Brattleboro, VT pursuant to V.R.E.F. 9(d).

_____

Thomas S. Durkin, Superior Judge
Environmental Division